Lloyd M. BOWLUS, Rollins Burdick Hunter Company, Rollins Burdick Hunter of Illinois and Rollins Burdick Hunter of New York, Plaintiffs,

v.

ALEXANDER & ALEXANDER SERVICES, INC. and Alexander & Alexander, Inc., Defendants.

No. 86 Civ. 7048 (MGC).

United States District Court, S.D. New York.

May 12, 1987.

Chadbourne & Parke by Charles K. O'Neill, Claudia L. Taft, New York City, for plaintiffs.

Ohrenstein & Brown by Mark J. Bunim, New York City, Widett, Slater & Goldman, P.C. by Jerome Gotkin, Sanford F. Remz, Boston, Mass., for defendants.

CEDARBAUM District Judge.

This action for damages and to enjoin defendants from enforcing restrictive covenants in certain employment agreements was originally commenced in the Supreme Court of New York County ("state court") and removed by defendants to this court. After removal, defendants moved to dismiss, or to transfer the action to the District Court for the Northern District of Illinois. Plaintiffs cross-moved to remand the action to the state court on the ground

that it had been removed improvidently. For the reasons discussed below, plaintiffs' cross-motion is granted, and this action is remanded to the state court.

## BACKGROUND

### I. *The Original Parties*

Plaintiff Lloyd M. Bowlus ("Bowlus") is a resident of Wisconsin. Plaintiff Rollins Burdick Hunter Company ("RBH") is a Delaware corporation with its principal place of business in Illinois. According to the complaint, RBH is the seventh largest commercial insurance broker in the United States, with revenues in 1985 of approximately $141 million. Plaintiff Rollins Burdick Hunter of Illinois ("RBH Illinois") is an Illinois corporation with its principal place of business in Illinois. It is a wholly owned subsidiary of RBH. Plaintiff Rollins Burdick Hunter of New York ("RBH New York") is a New York corporation with its principal place of business in New York. RBH New York is also a wholly owned subsidiary of RBH.

Defendants Alexander & Alexander Services, Inc. and Alexander and Alexander, Inc. (collectively "A & A") are Maryland corporations with their principal places of business in New York. A & A is the largest commercial insurance broker in the United States. According to the complaint, A & A's annual brokerage-related revenues are more than five times as great as those of RBH, and amounted to approximately $800 million in 1985. A & A has approximately 17,000 employees.

### II. *Facts*

Plaintiff Bowlus was employed by defendants in Chicago to solicit the accounts of corporations that were not already customers of A & A. In August 1977, Bowlus was required to sign a non-solicitation agreement. The agreement prohibited Bowlus from engaging in the solicitation of insurance brokerage business from any customers or "active prospects" of the defendants for a period of two years following the termination of his employment.

In April 1983, in connection with restricted common stock that he received as part of an incentive program, Bowlus was required to sign another post-employment non-solicitation agreement. This agreement contained an additional provision which prevented him from making certain disclosures without the defendants' consent. The agreement provided that it would be governed by New York law. Bowlus signed a similar agreement in April 1984.

In April 1985, Bowlus voluntarily terminated his employment with defendants to devote himself full-time to developing a fishing resort. For 15 months, he was not engaged in the insurance brokerage business. In 1986, Bowlus approached defendants about being rehired, but was told that they did not have a position for him. The Managing Vice-President allegedly told Bowlus that he could seek employment elsewhere without being concerned about the three non-competition agreements he had signed.

In June 1986, plaintiff began working as a producer of insurance brokerage business for plaintiff RHB, in its Chicago office. One month after Bowlus accepted the position from RHB, he received a letter from defendants reminding him of his obligations under the three agreements.

### III. *The History of the Litigation*

In August 1986, plaintiffs filed this action in state court alleging that defendants violated both the New York antitrust statute, General Business Law § 340 et seq. ("the Donnelly Act"), and New York common law, by requiring that Bowlus and all employees nationwide enter into non-competition agreements with defendants as a condition of employment. On September 12, 1986, defendants removed the action to this court by asserting federal question jurisdiction, pursuant to 28 U.S.C. § 1441(b). Defendants contend that since both RBH and defendants are large commercial insurance brokers, a fair reading of the original complaint shows that plaintiffs' claims really arise under the federal anti-

trust laws, even though the complaint seeks relief only under New York law.

After removing the action to this court, defendants moved to dismiss on the ground that the application of New York law to activities that defendants engage in nationwide would be an unconstitutional burden on interstate commerce. Defendants also sought dismissal based on the complaint's failure to state a claim under the Donnelly Act because that act is limited to activities occurring in and having their primary impact within New York.

Plaintiffs filed a cross-motion to remand the action to the state court because it had been removed improvidently. Subsequent to oral argument on those motions, plaintiffs filed an amended complaint limiting their claims to those arising under New York common law for the stated purpose of reinforcing their assurances at oral argument that they had no intention of asserting any federal claim. The amended complaint also dropped RBH New York as a plaintiff.

Thereafter, defendants moved to transfer this action to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a). Defendants claimed that, although federal question jurisdiction no longer existed under the amended complaint, plaintiffs had conferred diversity jurisdiction on this court by eliminating the only New York plaintiff.

## DISCUSSION

### I. *Removal*

This case presents interesting questions of federal jurisdiction. The first issue that must be addressed is whether the action was properly removed from state court.

### A. *The Original Complaint*

Plaintiffs' first complaint, on which removal was based, contained five "causes of action" related to the enforceability of the non-competition agreements. As a first "cause of action," plaintiffs alleged that the agreements "unlawfully restrain competition and the free exercise of activities in the conduct of the insurance brokerage business" in violation of New York common law and the Donnelly Act.

As a second "cause of action," plaintiffs claimed that the "right of the aforesaid plaintiffs to conduct their businesses unencumbered by the threat of legal or other action by defendants is jeopardized unless defendants are enjoined from taking any steps to enforce the agreements."

The third "cause of action" alleged that the restrictive covenants intimidated employees and discouraged competitors and were designed "to cause employees of defendants not to seek employment with other insurance brokers, including the aforesaid plaintiffs." This claim also arose under New York common law and the Donnelly Act.

The fourth and fifth "causes of action" also attacked the restrictive convenants as illegal restraints on competition. Plaintiffs sought damages, including treble damages under the Donnelly Act, and injunctive relief. They also requested a declaratory judgment that the agreements were illegal and unenforceable.

The Donnelly Act provides in pertinent part:

Every contract, agreement, arrangement or combination whereby

A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby

Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained ... is hereby declared to be against public policy, illegal and void.

The language of the statute itself limits its application to conduct within the state. In *Baker v. Walter Reade Theatres, Inc.*, 37 Misc.2d 172, 237 N.Y.S.2d 795 (Sup.Ct. 1962), the court refused to apply the Donnelly Act to defendant's alleged interference with plaintiff's business opportunities. The court stated that "free competition in the business, trade or commerce or the furnishing of any service in this State is

the emphasis and objective of the statute and not contracts having their impact outside the State." 37 Misc.2d at 173, 237 N.Y.S.2d 172.

### B. The "Master-of-the-Complaint" Rule

The party commencing an action is "master of the complaint" to decide what law he will rely on and to determine whether he will bring a "suit arising under the Constitution, treaties or law of the United States by his declaration or bill." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). To authorize the exercise of federal question jurisdiction, the existence of a federal question must appear on the face of the complaint. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974). In *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), the Court held that removal based on federal question jurisdiction requires that the federal question "be an element, and an essential one, of the plaintiff's cause of action … and the controversy must be disclosed upon the face of the complaint, unaided by the answer or the petition for removal." *Id.* at 112–113, 57 S.Ct. at 97–98. Accordingly, removal jurisdiction may not rest on the existence of a federal defense. Furthermore, where a claim arises under both federal and state law, a plaintiff is free to ignore the federal claims and pursue in state court those claims based on state law. *Pan American Petroleum Corp. v. Superior Court of Delaware*, 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961).

### C. The "Artful Pleading" Exception to the Master-of-the-Complaint Rule

In certain limited circumstances, a federal court may look behind the complaint to preclude a plaintiff from defeating federal question jurisdiction through "artful pleading," that is, by disguising a federal claim as a claim arising under state law. Defendants argue that this case comes within the artful pleading exception to the master-of-the-complaint doctrine.

Most of the cases in which federal courts have permitted removal based on artful pleading fall into two categories. The first category consists of cases in which federal pre-emption has eliminated the legal foundation of plaintiff's state law claims. It is in connection with pre-emption that courts first began searching for a way to avoid the "well-pleaded" complaint rule expressed in cases such as *Gully v. First Nat'l Bank, supra*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70. Since pre-emption arises only as a defense to a state law complaint, courts looked beyond the complaint to justify removal of claims pre-empted by federal law. *See, e.g., Fay v. American Cystoscope Makers*, 98 F.Supp. 278 (S.D.N.Y. 1951); Levy, *Federal Pre-Emption, Removal Jurisdiction, and the Well-Pleaded Complaint Rule*, 51 U.Chi.L.Rev. 634, 647–51 (1984). In *Metropolitan Life Ins. Co. v. Taylor*, ⸺ U.S. ⸺, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court explained the pre-emption exception to the master-of-the-complaint rule:

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. *Gully v. First National Bank* …. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.

*Id.*, 107 S.Ct. at 1546.

This is not a case in which federal statutes pre-empt state regulation of the subject. Federal antitrust law does not preclude state courts from adjudicating claims arising under state antitrust law. *See Salveson v. Western Bankcard Ass'n*, 525 F.Supp. 566 (N.D.Cal.1981), *aff'd in part, rev'd in part*, 731 F.2d 1423 (9th Cir.1984).

The second major category in which courts have permitted removal in the absence of a federal question expressed on the face of the complaint is made up of cases in which plaintiff's choice of a state

forum is motivated by the desire to evade the consequences of prior federal litigation.[1]

Defendants rely on *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D. N.Y.1980), among other cases, to support their argument that plaintiffs' claims actually arise under federal law. In that case as in this case, defendants removed a state court complaint alleging violations of state antitrust law. In that case, however, unlike this case, diversity jurisdiction authorized removal, and the court addressed federal question jurisdiction only as an additional basis for denying remand. In considering federal question jurisdiction, the court stated that it need not be bound by the characterization of the action in the complaint but that it could "peek ... to determine reality." *Id.* at 82. The "peek" revealed that the complaint in *In re Wiring Device* was nearly identical to criminal charges previously filed against the defendants in a federal antitrust indictment and to the claims asserted against the same defendants in more than thirty federal antitrust cases already pending in the federal courts.

Since the decision in *In Re Wiring Device,* both the Supreme Court and the Second Circuit have addressed the second category of removal based on artful pleading— the plaintiff who is seeking a second chance at the same litigation in another forum. In a footnote in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the Supreme Court used language which appeared to broaden the scope of federal question removal when it approved the removal of a complaint where "at least some of the claims had a sufficient federal character to support removal." *Id.* at 397, n. 2, 101 S.Ct. at 2427 n. 2. But the history of the case and other language in the same footnote show that the plaintiff instituted the state court suit in order to escape from the federal court.

The facts of the *Federated Department Stores* case are instructive. After the United States had brought a federal antitrust suit against Federated Department Stores for agreeing to fix the retail price of women's clothing sold in Northern California, seven parallel private suits for treble damages were filed against the same defendant. Each of the private complaints tracked the allegations of the Government's complaint. The federal district court dismissed all seven private actions for failure to allege an injury to business or property within the meaning of Section 4 of the Clayton Act. Five plaintiffs appealed the dismissal to the Ninth Circuit. Instead of appealing, plaintiffs Moitie and Brown refiled their actions in state court alleging parallel state law claims of civil conspiracy, unfair competition, fraud and restitution.

The two new state actions were then removed to federal court. "After 'an extensive review and analysis of the origins and substance of' the two Brown complaints," the district court denied plaintiffs' motion to remand because it found as a fact that plaintiffs "had attempted to avoid removal jurisdiction by 'artful[ly] casting their essentially federal law claims' as state-law claims." *Id.* at 397 n. 2, 101 S.Ct. at 2427 n. 2. The court also granted defendants' motion to dismiss on the ground of *res judicata,* based on the previous district court dismissal. Brown and Moitie appealed. While the appeals were pending, the Supreme Court decided a Clayton Act case which led the Ninth Circuit to reverse the district court's dismissal of the five plaintiffs who had appealed. On appeal of the *res judicata* dismissals, the Ninth Circuit reversed, holding that it would be unjust for the two plaintiffs who had chosen

---

1. Not every case cited by defendants is reconcilable with this analysis. In *Patriot Cinemas, Inc. v. General Cinema Corp.,* No. 86–1190–Y (D.Mass. Dec. 1, 1986) [Available on WESTLAW, DCT database], the court permitted removal of a state suit in which plaintiff asserted state antitrust and common law claims. The court denied remand because it found that plaintiff's allegations challenging distribution of first-run films stated a claim arising under the Sherman Act, despite the complaint's reliance on state law. The court expressly refused to consider plaintiff's motive for filing in state court by ignoring the fact that plaintiff had previously commenced two federal suits against the same defendants raising substantially similar claims.

to refile in state court rather than to appeal, to be bound by the reversed district court decision. The Supreme Court granted defendants' petition for certiorari. Moitie's action was voluntarily dismissed, leaving only Brown.

*Res judicata* was the main issue before the Supreme Court. But the Court's jurisdiction depended on the propriety of the removal of Brown's state law complaint. In an important footnote, the Court approved the removal determination. The Court quoted Wright, Miller & Cooper that:

> courts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum ... [and that] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.' 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3722, pp. 564–566 (1976).

*Id.* at 397 n. 2, 101 S.Ct. at 2427 n. 2. The Court also stated that it would not question the district court's "factual finding" on this issue. *Id.*

In *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754 (2d Cir.) *cert. denied,* —— U.S. ——, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986), the Second Circuit carefully analyzed the *Federated Department Stores* footnote, and identified the two factors which led the Supreme Court to consider at least one of Brown's state law claims to be federal in nature and removable. First, "the elements of the claim were virtually identical to those of a claim expressly grounded on federal law." *Id.* at 760. Brown's civil price-fixing conspiracy claim paralleled federal antitrust law. The Second Circuit stressed that identity of claims is not enough. For, to permit removal whenever a state claim has the same elements as a federal claim would nullify the plaintiff's right to choose whether to proceed in state or federal court.

The second essential factor identified by the Second Circuit was Brown's previous election to proceed in federal court on the claim. Thus, Brown had already had an opportunity to be master of his complaint, and had chosen to assert his price-fixing claim under the federal law in federal court. He could not thereafter by artful pleading escape the consequences of his own free choice.

■ Applying these factors, I find that removal of this case was improper, and the action must be remanded to the state court. It is true that plaintiffs' claims arising under the Donnelly Act have elements nearly identical to federal antitrust claims, but *Travelers* instructs that identity of elements is insufficient standing alone to justify removal. Plaintiffs' have chosen from the beginning to proceed under state law. There is nothing in the history of this case that warrants depriving plaintiffs of that choice by requiring them to litigate their claims under federal law.

Plaintiffs chose to sue in New York, presumably because of New York's disfavor of restrictive covenants in employment agreements. While employees have challenged post-employment restrictive covenants under both federal and state antitrust laws, *see, e.g., Bradford v. New York Times Co.,* 501 F.2d 51 (2d Cir.1974), *Becher v. Peress,* 111 A.D.2d 892, 490 N.Y.S.2d 600 (2d Dep't 1986), federal antitrust law is not the traditional means of dealing with this issue. The validity of a restrictive covenant contained in an employment contract is generally a matter of state policy. The gravamen of this complaint is an attack on the validity of the restrictive covenants agreed to by Bowlus, and entered into with a corporation whose principal place of business is New York. Two of these agreements expressly provide that they will be governed by New York law. For these claims, plaintiffs need not rely on federal antitrust law. If defendants are correct that the impact of their conduct falls beyond New York's borders, they are free to assert the interstate nature of their conduct as a defense in the state court action.

Under the teaching of the Supreme Court and the Second Circuit, without federal pre-emption or an earlier federal suit on the claims, there is no justification for removing a complaint setting forth state claims on its face. If defendants' position

were accepted here, the artful pleading exception would swallow up the "master of the complaint" rule.

## II. *The Effect of the Amended Complaint*

Defendants contend that even if the initial removal of this case was improper, by amending their complaint, plaintiffs have conferred diversity jurisdiction on this court which precludes remand to the state court.

 Because there was no federal jurisdiction when the original complaint was improvidently removed, and the amended complaint would provide no basis for removal, this action is remanded to the state court.[2]

*Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179 (7th Cir.1984), on which defendants rely, is distinguishable. In *Bernstein*, plaintiff filed an amended complaint asserting a federal claim after his motion to remand had been denied. The trial court granted summary judgment for defendants, and plaintiff appealed. The Seventh Circuit found that plaintiff's motion to remand the original complaint should have been granted, but noted that after the trial court had erroneously denied remand, Bernstein "threw in the towel" and amended his complaint to add a federal claim. The court reasoned that to permit a plaintiff to take advantage of his position in federal court to assert a federal claim and then, after he has lost his case, to allow him to start over in state court would be an improper exploitation of federal jurisdiction.

In this case, plaintiffs amended their complaint in an effort to reinforce the intended local nature of their claims before the determination of the remand motion. Moreover, in *Bernstein*, remand would have been a waste of the judicial resources of the state as well as the federal court.

The day after the case was remanded to state court, the defendant would again have been entitled to remove it. Here, the amended complaint would not be removable under 28 U.S.C. § 1441(b) because the defendants are citizens of New York, the state in which the action is brought. In this case, remand will restore to the state court a case that will remain there even if the amended complaint is filed.

For the reasons set forth above, plaintiff's motion to remand is granted. Defendants' motion to dismiss is remanded with the action. Defendants' motion to transfer is denied. This action is remanded to the Supreme Court of New York County.

SO ORDERED.

---

**2.** *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), is not to the contrary. In *Grubbs,* the Supreme Court held that if there is any basis for sustaining federal jurisdiction of a judgment entered after a trial on the merits has taken place without any motion to remand, the validity of removal may not be raised *sua sponte* by the appellate court. The Court did not even suggest that denial of a timely motion to remand would have been permissible.