Frederick **WEBSTER, Sr.** and **David Avant,** on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION,** Defendant.

**No. 05 Civ. 2592(NRB).**

United States District Court, S.D. New York.

Aug. 4, 2005.

Louis Gottlieb, Goodkind Labaton Rudoff & Sucharow LLP, New York City, for Plaintiff.

Kenneth W. Taber, Pillsbury Winthrop LLP, New York City, for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

In March of 2005, defendant New York Life Insurance and Annuity Company ("NYLIAC") removed this case from the Supreme Court of the State of New York and moved to dismiss pursuant Fed R. Civ. P. 12(b)(1) on the grounds that plaintiff's claims are barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Shortly thereafter, Frederick Webster, Sr. ("Webster") and David Avant ("Avant") (collectively, "plaintiffs") moved for remand on the ground that their complaint alleges only state law claims and diversity of citizenship is absent. Oral argument on this motion was held on July 19, 2005. For the foregoing reasons, we deny defendant's motion to dismiss and grant plaintiffs' motion to remand.

### *BACKGROUND*

In 1999 and 2001, plaintiffs purchased variable annuity policies from defendant. On February 14, 2005,[1] plaintiffs filed a class action in the Supreme Court of the State of New York alleging that defendant had breached their policies by failing to pay a minimum guaranteed interest rate on their investments.

---

**1.** The Class Action Fairness Act of 2005, P.L. 109–2, was signed into law on February 18, 2005, four days after the filing of the complaint, and therefore does not apply to this case.

Plaintiffs allege that they purchased NYLIAC annuity policies using "Form 999–190." Complaint ¶ 17. Avant's complete policy and application are attached as Part 1 of the appendix to defendant's memorandum in support of its motion to dismiss. Page 2 of the policy, titled "POLICY DATA," presents a variety of information, including a list of "Allocation Alternatives," identifying information for Avant, and the annuity's commencement date. Near the bottom of the page is the following text: "MINIMUM GUARANTEED INTEREST RATE: 3%." Plaintiffs allege that "[a]lthough the Policy Data Page identifies multiple annuity accounts available to purchasers under the contract ... this minimum guaranteed interest rate was not limited to any specific account or accounts." Complaint ¶ 19. They argue that this phrase established a "minimum guaranteed interest rate" that applied to the entire investment of investors who purchased NLYIAC annuity policies using Form 999–190. *Id.* ¶ 18. Plaintiffs are not arguing that NYLIAC was guaranteeing that amounts invested in mutual funds would grow by a minimum of 3 percent; rather, they claim they were entitled to 3 percent interest on the balance invested in those funds. Transcript of Oral Argument at 24. Defendant argues that other language in the contract established that the minimum rate applied only to the portion of plaintiffs' money invested in the Fixed Account or the Dollar Cost Averaging Program ("DCAP"). Def. Support Mem. at 4–6.

### DISCUSSION

#### I. Applicable Law

In enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress imposed stringent pleading requirements and mandatory discovery stays for securities fraud class actions filed in federal court in order to prevent meritless securities fraud class actions, called "strike suits." *Spielman v. Merrill, Lynch, Pierce, Fenner, & Smith, Inc.*, 332 F.3d 116, 122–23 (2d Cir.2003). SLUSA, in turn, was enacted to close a loophole by which claimants eluded the PSLRA's restrictions by filing in state court alleging state securities law claims. *In re World-Com, Inc. Securities Litigation*, 308 F.Supp.2d 236, 241–42 (S.D.N.Y.2004) (quoting *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir.2003)).

SLUSA provides in relevant part that:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §§ 77p(b), 78bb(f)(1).

Through SLUSA, Congress intended to "provide national, uniform standards for the securities markets and nationally marketed securities." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 111 (2d Cir.2001). The Second Circuit explained that:

[I]n enacting SLUSA, "Congress could not have spoken more clearly" about its intention "to completely preempt the field of certain types of securities class actions by essentially converting a state law claim into a federal claim and creating federal jurisdiction and venue for specified types of state securities fraud claims." *Spielman*, 332 F.3d at 123 (emphasis omitted). As we explained in *Spielman*, complete preemption "manifests a [c]ongressional policy determina-

tion that the 'state law claim in that area is of necessity so federal in character that it arises under federal law.' " *Id.* at 123 n. 5. (quoting *Cicio v. Does,* 321 F.3d 83, 92 (2d Cir.2003) (further internal quotation omitted)). It therefore "provides in practice an exception to the well-pleaded complaint rule," *id.*, such that when SLUSA's conditions have been satisfied, "the plaintiff has necessarily invoked federal question jurisdiction, even though he [or she] did not wish to," and the court must dismiss for failure to state a claim because SLUSA has preempted the state law basis for the claim, *id.* at 131–32 (Newman, J., concurring).

*Dabit v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 395 F.3d 25, 33–34 (2d Cir. 2005).

However, SLUSA has "broad, *but not unlimited,* scope." *Spielman,* 332 F.3d at 123 (emphasis in original). To dismiss an action under SLUSA, the defendant must show that "(1) the action is a 'covered class action' under SLUSA; (2) the action purports to be based on state law; (3) the action involves a 'covered security' under SLUSA; (4) the defendant misrepresented or omitted a material fact or employed a deceptive device; (5) 'in connection' with the purchase or sale of such security." *Araujo v. John Hancock Life Ins. Co.,* 206 F.Supp.2d at 380, 381 (E.D.N.Y.2002) (citing 15 U.S.C. § 77p(b)).

Here, the parties disagree only about the fourth element. Plaintiffs argue that their complaint does not allege any untrue statement, omission of a material fact, or manipulative or deceptive device or contrivance. Plaintiffs further contend that their complaint merely alleges a breach of contract claim under state law and so falls outside the scope of SLUSA. Defendant counters that plaintiffs' complaint was "artfully drafted to avoid the terms 'misleading,' 'misrepresentation,' 'omission,'

'fraud,' 'deception,' or 'scheme.' " Def. Reply Mem. at 2. The complaint, it argues, "effectively allege[s] misrepresentations and omissions of material fact—regarding the inapplicability of the 3% minimum guaranteed interest rate to the Separate Account." Def. Support Mem. at 11–12.

A party need not bring a claim for fraud in order to give rise to SLUSA preemption. For example, in *Korsinsky v. Salomon Smith Barney Inc.,* the court explained that:

> The "master of the complaint" rule does not limit the Court to the face of the complaint, however, or to plaintiff's characterization of his claims. *Still v. DeBuono,* 927 F.Supp. 125, 128 (S.D.N.Y.1996). "In certain limited circumstances, a federal court may look behind the complaint to preclude a plaintiff from defeating federal question jurisdiction through 'artful pleading,' that is, by disguising a federal claim as a claim arising under state law." *Bowlus v. Alexander & Alexander Servs., Inc.,* 659 F.Supp. 914, 918 (S.D.N.Y.1987).

No. 01 Civ. 6085, 2002 WL 27775 at *2 (S.D.N.Y. Jan. 10, 2002). In *Korsinsky,* the parties disagreed as to whether the action involved a misrepresentation or omission, but while "the complaint clearly state[d] that '[t]his is not an action for fraud,' it outline[d] several instances of alleged misrepresentations" made by the defendants. *Id.* at *4. The court held that plaintiff's allegations "regarding an alleged scheme by defendants to issue artificially positive ratings on AT & T stock" constituted "material misrepresentations or omissions regarding the value of the securities," and that the claims alleged in the complaint therefore "f[e]ll under the purview of SLUSA." *Id.* at *5–6.

Similarly, in *Araujo,* the court held that a plaintiff could not "plead what [were] in essence securities fraud claims even

though they [were] framed as state law claims." *Araujo*, 206 F.Supp.2d at 384 (citing *Korsinsky*, 2002 WL 27775 at *4). The *Araujo* plaintiff had "dresse[d] his claims" as breach of contract and unjust enrichment, but the "crux of the ... complaint" was a "scheme to charge policyholders premiums under variable life insurance policies during 'risk-free' periods." *Id.* at 385. The court found that this alleged scheme was a "misrepresentation of a material fact because it concern[ed] the value of the policy" and that SLUSA therefore applied to the complaint and prevented a class action based upon state law. *Id.* at 385.

However, in *Norman v. Salomon Smith Barney Inc.*, 350 F.Supp.2d 382 (S.D.N.Y. 2004), we see the outer boundary of SLUSA's reach. The *Norman* plaintiffs were customers who had employed the defendant for individual investment management services, and sued for breach of contract and breach of fiduciary duties on the grounds that defendant did not reveal that its research analysts' recommendations were tainted by conflicts of interest. Judge Lynch found that, "[r]egardless of the factual merits of these claims, they are not securities fraud claims, nor claims that depend on establishing material misrepresentations or omissions in connection with the purchase or sale of securities, within the meaning of SLUSA." *Norman*, 350 F.Supp.2d at 387. Just as "plaintiffs may not avoid SLUSA pre-emption simply by artful pleading that avoids the actual words 'misrepresentation' or 'fraud,' neither may defendants avoid every possible claim by recasting any lawsuit in which a securities broker is a defendant into a securities fraud action." *Id.* at 386 (citing *MDCM Holdings Inc. v. Credit Suisse First Boston*, 216 F.Supp.2d 251, 257 n. 12 (S.D.N.Y.2002); *Gray v. Seaboard Securities, Inc.*, 241 F.Supp.2d 213, 219 (N.D.N.Y.2003)).

## II. Analysis

Here, defendant argues that the complaint "effectively asserts that the way in which the policy specifications were listed on the Data Page misled Plaintiffs into concluding that guaranteed interest was paid on the policy Separate Account values." Def. Support Mem. at 13. According to defendant, plaintiffs' claim relies on allegations that the Policy Data Page "misleads as to the application of the minimum guaranteed interest rate," and therefore amounts to an assertion that Policy Data Page was a fraudulent and deceptive practice employed by defendant. Def. Support Mem. at 12.

At oral argument, counsel for defendant contended that plaintiff's complaint, properly understood, alleges a material omission of the fact that the guaranteed interest rate on the data policy page does not apply to the variable account values, or of the omission that this was the defendant's interpretation of the contract. Transcript of Oral Argument at 10, 15, 16, 28, 31. We do not believe plaintiffs have in fact alleged any misrepresentation by defendant. Unlike the cases upon which defendant relies, such as *Korsinsky* and *Araujo*, plaintiffs have not described any circumstances that constitute misrepresentation. Defendant's argument is essentially an assertion that "[y]ou have to assume in any lawsuit there's a disputed truth, and if there's a disputed truth, then there is either an untrue statement or there is an omission of a material fact." Transcript of Oral Argument at 31. But while a contract dispute commonly involves a "disputed truth" about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract. We decline to delve into the semantics of what is a "fact."

Instead we note that because the language of a contract controls, rather than the parties' subjective intent, parties to a contract must agree on the language to form a contract, but do not need to disclose their interpretations of that language in order to avoid charges of fraud.[2] Were we to endorse the proposition that a disagreement over the application of words in a contract is "effectively" a claim that the contract itself was a deceptive practice, SLUSA would swallow up all of contract law. In prosecuting their state law class action contract claim, plaintiffs will not prevail by establishing that they did not understand the terms of the contract. Instead, they will have to establish that the terms of the contract support their interpretation of the agreement. Thus, we find that SLUSA does not apply to the plaintiffs' complaint. Dismissal under SLUSA is therefore unwarranted, and remand to state court is required.

### CONCLUSION

Therefore, for the reasons set forth above, defendant's motion to dismiss is denied, and plaintiffs' motion to remand is granted.

**SO ORDERED.**

---

2. *See* 11 Williston on Contracts § 31:4, p. 280–83 (4th ed. 1999) ("[I]t is not the real intent but the intent expressed or apparent in the writing which is sought; it is the objective, not the subjective, intent that controls").