In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2989

MARGARET RICHEK GOLDBERG, as Trustee under the Seymour
Richek Revocable Trust, on behalf of a class,

*Plaintiff-Appellant*,

*v.*

BANK OF AMERICA, N.A., and LASALLE BANK, N.A.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 6779 — **Robert M. Dow, Jr.**, *Judge*.

ARGUED JANUARY 17, 2012 — DECIDED JANUARY 23, 2017

Before FLAUM, EASTERBROOK, and HAMILTON, *Circuit
Judges*.[*]

---

[*] Circuit Judge Cudahy was a member of the panel that heard oral
argument but died before the decision was issued. On December 1, 2016,
Circuit Judge Flaum was selected by a random procedure to replace him.
He has read the briefs and listened to the recording of oral argument.

PER CURIAM. LaSalle Bank offered custodial accounts that clients used to invest in securities. If an account had a cash balance at the end of a day, the cash would be invested in ("swept" into) a mutual fund from a list that the client chose. LaSalle Bank would sell the mutual fund shares automatically when the customer needed the money to make other investments or wanted to withdraw cash. Stephen Richek, as trustee under the Seymour Richek Revocable Trust, opened a custodial account with a sweeps feature. (The current trustee is Margaret Richek Goldberg; for the sake of continuity we continue to refer to the investor and plaintiff as Richek.) Richek was satisfied with LaSalle's services until it was acquired by Bank of America. After the acquisition, Bank of America notified the clients that a particular fee was being eliminated. Richek, who had not known about the fee, then sued in state court, contending that LaSalle had broken its contract (which had a schedule that did not mention this fee) and violated its fiduciary duties. Richek proposed to represent a class of all customers who had custodial accounts at LaSalle. (Because LaSalle became a subsidiary of Bank of America, and now operates under its name, we refer from now on to "the Bank," which covers both institutions.)

The Bank removed the suit to federal court, relying on the Securities Litigation Uniform Standards Act of 1998 (SLUSA or the Litigation Act), 15 U.S.C. §78bb(f). (Section 78bb is part of the Securities Exchange Act of 1934. The Litigation Act added similar language to the Securities Act of 1933. See 15 U.S.C. §77p(b). The Bank is not an issuer or underwriter covered by the 1933 Act, so we refer to §78bb(f).) SLUSA authorizes removal of any "covered class action" in which the plaintiff alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a

covered security" (§78bb(f)(1)(A)). The statute also requires such state-law claims to be dismissed. The district court held that Richek's suit fits the standards for both removal and dismissal and entered judgment in the Bank's favor. 2011 U.S. Dist. LEXIS 86105 (N.D. Ill. Aug. 4, 2011).

According to the complaint, some mutual funds paid the Bank a fee based on the balances it transferred, and the Bank did not deposit these fees in the custodial accounts or notify customers that it was retaining them. The Bank's retention of these payments is economically equivalent to a secret fee collected from the accounts, because they contained less money than they would have had the Bank credited them with the fees paid by the mutual funds—fees derived from the custodial accounts themselves. Richek contends that the Bank thus kept for its own benefit fees exceeding those in the contractual schedule, without disclosure to its customers.

Richek's claim depends on the omission of a material fact—that some mutual funds paid, and the Bank kept, fees extracted from the "swept" balances. He concedes that his suit is a "covered class action" (the class has more than 50 members; see §78bb(f)(5)(B)(i)(I)) and that each of the mutual funds is a "covered security" (see §78bb(f)(5)(E)). The Bank's omission was in connection with a purchase or sale of a "covered security". See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006). *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1053 (2014), does not affect this conclusion, because customers were dealing directly with covered investment vehicles. (*Troice* holds that the Litigation Act does not apply when the customer invests in an asset that does not consist of, or contain, covered securities.) Because "[n]o covered class action based upon the statutory or common

law of any State or subdivision thereof may be maintained in any State or Federal court by any private party" (§78bb(f)(1)) when these conditions have been met, the district court's decision is unexceptionable.

According to Richek, the Bank's omission is outside the scope of the Litigation Act because it does not involve the price, quality, or suitability of any security. But the Litigation Act does not say what kind of connection must exist between the false statement or omission and the purchase or sale of a security; the statute asks only whether the complaint alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security". Richek's complaint alleged a material omission in connection with sweeps to mutual funds that are covered securities; no more is needed.

Apparently Richek believes that only statements (or omissions) about price, quality, or suitability are covered by the federal securities laws, and that only state-law claims that overlap winning securities claims are affected by the Litigation Act. This is doubly wrong. First, *Dabit* holds that claims that arise from securities transactions are covered whether or not the private party could recover damages under federal law. (In *Dabit* itself no private right of action for damages was possible, yet the Court held the claim covered and preempted.) Second, the Securities Exchange Act of 1934 forbids material misrepresentations and omissions in connection with securities transactions whether or not the misrepresentation or omission concerns the price, quality, or suitability of the security. See, e.g., *SEC v. Zandford*, 535 U.S. 813 (2002); *United States v. Naftalin*, 441 U.S. 768 (1979). Thus Richek may have had a good claim under federal securities

law. But he chose not to pursue it, and SLUSA prevents him from using a state-law theory instead.

We said earlier that Richek concedes that his claim rests on a material omission and that the mutual funds are covered securities. He does not concede that the omission was "in connection with" the purchase or sale of a covered security. This branch of his argument rests on *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006). We reject Richek's contention for the reasons given in *Holtz v. JPMorgan Chase Bank, N.A.*, No. 13-2609 (7th Cir. Jan. 23, 2017), slip op. 9–11.

Richek also maintains that his action rests on state contract law and state fiduciary law, not securities law. This line of argument, too, is addressed and rejected in *Holtz*, which holds that if a claim could be pursued under federal securities law, then it is covered by the Litigation Act even if it also could be pursued under state contract or fiduciary law. A claim that a fiduciary that trades in securities for a customer's account has taken secret side payments is well inside the bounds of securities law. See *Holtz*, slip op. 4–9.

AFFIRMED

FLAUM, *Circuit Judge*, concurring. I agree that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f), warranted removal and dismissal of Stephen Richek's lawsuit. The challenge presented by this appeal requires addressing the scope of SLUSA's "misrepresentation or omission of a material fact" prohibition.

Stephen Richek, as trustee under the Seymour Richek Revocable Trust, entered into an agreement with LaSalle National Bank, under which LaSalle would open a custodian account for the Trust to invest in securities.[1] The parties agreed to a fee schedule that required LaSalle to notify Richek of any increases. As part of maintaining Richek's custodian account, LaSalle would invest ("sweep") any cash balances at the end of the day into a mutual fund Richek had selected from a list provided by LaSalle. Eventually, Richek learned that LaSalle, unbeknownst to him, had been accepting reinvestment ("sweep") fees from the mutual funds based on the average daily invested balance LaSalle had swept from his custodian account. Each fee was unique to the particular mutual fund.

Richek sued the Bank[2] in Illinois state court on behalf of all customers with custodian accounts, alleging that the Bank had (1) violated its fiduciary duties and (2) breached the underlying contract. The Bank removed the lawsuit to federal court pursuant to SLUSA and 28 U.S.C § 1332(d)(2). Richek subsequently amended his complaint, and the district court

---

[1] Margaret Richek Goldberg is the current trustee; I will refer to the investor and plaintiff as "Richek."

[2] Prior to the lawsuit, Bank of America acquired LaSalle, and LaSalle became a subsidiary of Bank of America; I will refer to both institutions and defendants as "the Bank."

dismissed that amended complaint under SLUSA, entering judgment for the Bank. This appeal followed.

SLUSA provides, in relevant part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > (A) A misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). There is no dispute that Richek's class action qualified as a "covered class action" under the statute. Instead, the issue is whether Richek alleged "a misrepresentation or omission of a material fact."[3]

*Brown v. Calamos*, 664 F.3d 123 (7th Cir. 2011), is instructive. There, a plaintiff shareholder sued a closed-end investment fund alleging that the fund had breached its fiduciary duty by redeeming a particular stock, at terms unfavorable to the common shareholders, in an effort to remain in the good graces of the investment banks and brokerage firms facing lawsuits stemming from the stock's value after the 2008 financial crisis. *Id*. at 126. We concluded, despite the complaint's language to the contrary,[4] that the complaint "implicitly" alleged a mate-

---

[3] Richek also disputes that his allegations were "in connection with the purchase or sale of a covered security." I agree with Judge Easterbrook and reject these arguments under *Holtz v. JPMorgan Chase Bank, N.A.*, No. 13-2609 (7th Cir. Jan. 23, 2017), slip. op. 9–11.

[4] The complaint explicitly stated, "Plaintiff does not assert by this action any claim arising from a misstatement or omission in connection with

rial misrepresentation or omission: The fund had failed to disclose the conflict of interest created by its broader concerns for the fund family's[5] long-term wellbeing. *Id*. at 127. Without addressing the complaint's unjust enrichment claim, we affirmed the district court's dismissal of the complaint under SLUSA. *Id*. at 131.

In doing so, we considered three approaches to dismissing complaints under SLUSA: (1) the Sixth Circuit's "literalist" approach, where the court asks simply whether the complaint can reasonably be interpreted as alleging a material misrepresentation or omission, *see Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 554–55 (6th Cir. 2011); (2) the Third Circuit's "looser" approach, where the court asks whether proof of a material misrepresentation or omission is inessential (an "extraneous detail" that does not require dismissal) or essential (either a necessary element of the cause of action or otherwise critical to a plaintiff's success in the case, warranting dismissal), *see LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008) (citing *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005)); and (3) the Ninth Circuit's "intermediate" approach, where the court dismisses preempted suits without prejudice, permitting plaintiffs to file complaints devoid of any prohibited allegations, *see Stoody-Broser v. Bank of America*, 442 F. App'x 247, 248 (9th Cir. 2011).

---

the purchase or sale of a security, nor does plaintiff allege that Defendants engaged in fraud in connection with the purchase or sale of a security." Such a statement, however, was not a well-pleaded allegation but rather a legal conclusion entitled to no deference on review.

[5] The fund at issue was one of at least twenty in a family of mutual funds.

We have expressed concern with the Ninth Circuit's approach, cautioning, "No longer in American law do complaints strictly control the scope of litigation." *Brown*, 664 F.3d at 127. A plaintiff who removes SLUSA-triggering allegations in an attempt to avoid dismissal may simply "reinsert" them later upon returning to state court. *Id*. It is an open question in this Circuit whether this risk of reinsertion warrants a court's looking beyond the amended complaint to the original pleading.[6] Doing so may leave the court's analysis vulnerable to hindsight bias, but may also aid in guarding against artful amendments. Richek's complaint history illustrates this tension. In his original complaint in state court, Richek's fiduciary duty claim alleged,

> Defendants breached their fiduciary duties of loyalty, care and candor when they *steered* plaintiff and members of the Class to investment vehicles that had agreed to pay a percentage fee to defendants from, and based on, reinvestments made by Custodian Accounts.

(emphasis added). This claim is nearly identical to the fiduciary duty claim dismissed pursuant to SLUSA in *Holtz v. JPMorgan Chase Bank, N.A.*, No. 13-2609 (7th Cir. Jan. 23, 2017), slip. op. 1–2, where the plaintiff alleged that J.P. Morgan

---

[6] Actually, as suggested by *Brown*, it may be that the district court may consider *only* the original complaint in assessing a defendant's SLUSA filing; and if so, Richek's amendment was inappropriate. *See* 664 F.3d at 131 (discussing amendments to a complaint after a defendant has moved to dismiss under SLUSA); *see also id.* (disagreeing with *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002)). In any event, as will be explained, SLUSA warranted dismissal of both the original and amended complaints in this case.

Chase had steered its employees to invest client money in the bank's own mutual funds, despite higher fees or lower returns. As we noted, claims alleging that "one party to a contract conceal[ed] the fact it planned all along to favor its own interests … is a staple of federal securities law." *Id.* at 6–7. Here, upon removal to federal court, Richek amended his complaint to among, other things, omit the "steered" language. This amendment, however, does not alleviate the concerns under SLUSA: "[O]nce the case shorn of its fraud allegations resumes in the state court, the plaintiff—who must have thought the allegations added *something* to his case, as why else had he made them?—may be sorely tempted to reintroduce them, and maybe the state court will allow him to do so. And then SLUSA's goal of preventing state-court end runs around limitations that the Private Securities Litigation Reform Act had placed on federal suits for securities fraud would be thwarted." *Brown*, 664 F.3d at 128. One must then turn to Richek's amended complaint, and to the two remaining approaches to dismissals under SLUSA, with this "reinsertion" risk in mind.

As in *Brown*, Richek's fiduciary duty claim triggered SLUSA preemption under both the Sixth Circuit's "literalist" approach and the Third Circuit's "looser" approach. In his amended complaint, he claims,

> Defendants breached their duty of candor to plaintiff and members of the Class when they *failed to disclose* that they were receiving daily cash re-investment (sweep) fees from investment vehicles into which cash balances from Custody Accounts were transferred.

(emphasis added). Following the "literalist" approach, the claim's language speaks for itself. One can reasonably read it to allege a material misrepresentation or omission: The Bank failed to disclose a particular fee that, if disclosed, may have "given pause to potential investors." *Brown*, 664 F.3d at 127. Likewise, under the "looser" approach, the Bank's failure to disclose was far from an inessential "extraneous detail." Rather, Richek's claim rested on it: To have succeeded on his fiduciary "duty of candor" claim, Richek needed to show that the Bank failed to disclose, or omitted, the fact that it collected "swipe fees" while investing its clients' custody-account cash balances. The inherent misrepresentation becomes especially clear after considering the claim as it originally appeared to the state court—if, in fact, we may consider the original complaint—which alleged that the Bank secretly "steered" the clients' money to those mutual funds that had agreed to pay the Bank "sweep fees." The risk that Richek may "reinsert" these original allegations in a future state-court proceeding is amplified by the fact that his amended claim is inseparably intertwined with a material misrepresentation or omission. *See generally Brown*, 664 F.3d at 128–31. As such, Richek's fiduciary duty claim triggered SLUSA preemption.

All of this raises the question: Did SLUSA preempt Richek's entire *complaint* or just the individual *claim*? We have not decided this issue.[7] Some circuits, on one hand, have endorsed a claim-by-claim approach. *See In re Kingate Mgmt. Ltd. Lit.*, 784 F.3d 128, 153 (2d Cir. 2015); *In re Lord Abbett Mut. Funds Fee Lit.*, 553 F.3d 248, 254–58 (3d Cir. 2009); *Proctor v.*

---

[7] Although we discussed the plaintiff's claims in *Brown* collectively, and thus referred to a single "suit," we did not address the issue of whether individual claims may be preempted under SLUSA.

*Vishay Intertech. Inc.*, 584 F.3d 1208, 1228–29 (9th Cir. 2009). The Third Circuit, for example, has explained that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some preempted claims." *In re Lord Abbett*, 553 F.3d at 255–56. Instead, the court concluded: "Allowing those claims that do not fall within SLUSA's preemptive scope to proceed, while dismissing those that do, is consistent with the goals of preventing abusive securities litigation while promoting national legal standards for nationally traded securities." *Id.* at 257. On the other hand, some courts have interpreted SLUSA to preempt actions, not individual claims. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 n.6 (11th Cir. 2002); *Hidalgo-Velez v. San Juan Asset Mgmt., Inc.*, Civil No. 11–2175CCC, 2012 WL 4427077, at *3 (D.P.R. Sept. 24, 2012), *rev'd on other grounds*, 758 F.3d 98 (1st Cir. 2014) ("Removal of the entire action was proper because SLUSA precludes actions; not just claims. Based on [SLUSA's] statutory language, many courts have rejected the claim-by-claim analysis advanced by Plaintiffs.") (citation omitted) (collecting cases).

This appeal, however, does not require us to resolve the issue. Richek's second claim, alleging breach of contract, also triggered SLUSA preemption. Specifically, Richek's amended complaint alleged,

> Despite full performance by plaintiff and the other members of the Class, defendants breached their contract with plaintiff and the other members of the Class by receiving daily cash re-investment (sweep) fees on cash balances in Custody Accounts that were transferred into money market or other investment vehicles from the recipients of the transferred

> funds, *without authorization, or disclosure to*, Custody Account holders.

(emphasis added). We have previously explained that "a plaintiff [should not be able to] evade SLUSA by making a claim that did not *require* a misrepresentation [or omission] in every case, such as a claim of breach of contract, but did in the particular case." *Brown*, 664 F.3d at 127. The same is true here. Richek alleged the Bank breached the contract by receiving the "sweep fees" without "authorization, or disclosure to," Richek. The disclosure claim inherently alleges a material misrepresentation or omission for the same reasons that the "disclosure" language in Richek's fiduciary duty claim does. And for Richek to have "authorized" the fees, the Bank would have had to have disclosed them to him; so the "authorization" claim was still fundamentally tied to a material misrepresentation or omission.

As noted in *Holtz*, SLUSA does not preempt all contract claims—just those that allege misrepresentations or omissions. Claims involving negligent breach or post-agreement decisions to breach, for example, may avoid SLUSA's scope. *Holtz*, slip. op. at 7. I do not, however, read the examples identified in *Holtz* as exhaustive. Richek's breach of contract claim may have avoided SLUSA preemption had he pleaded, for instance, that the Bank effectively reduced the "returns" the parties had agreed Richek would receive. Although such an allegation would not necessarily have involved negligence on the Bank's part, or a post-agreement decision to breach, it still may have successfully supported a breach of contract claim that did not include a material misrepresentation or omission. But Richek did not take this approach.

Thus, SLUSA preempted Richek's complaint, and the district court properly dismissed it.

HAMILTON, *Circuit Judge*, dissenting. "Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they 'really' involve deception or misrepresentation." *Freeman Investments, L.P. v. Pacific Life Ins. Co.*, 704 F.3d 1110, 1116 (9th Cir. 2013) (reversing dismissal of similar breach of contract case). That's why we should reverse the dismissal of this complaint, which alleges only breach of contract and breach of fiduciary duty, not any form of fraud or negligent misrepresentation.

Plaintiff's breach of contract claim is simple: my contract with the bank spelled out the fees the bank would charge for its services. The bank breached the contract by charging additional fees. Plaintiff can prove that claim without proving any misrepresentation or omission of material fact.

To affirm dismissal, however, my colleagues transform this simple claim for breach of contract into one of "omission of a material fact." The "omitted fact" was that the bank was breaching the contract by charging the unauthorized fees. By this sort of reverse alchemy, my colleagues turn gold into lead. They use logic that other circuits have rejected and transform an ordinary state-law claim for breach of contract into a leaden and doomed claim under federal securities law. I respectfully dissent.

The opinions in this case and *Holtz v. JPMorgan Chase Bank, N.A.*, No. 13-2609, widen an already existing circuit split under SLUSA. They also head in the wrong direction. They take our circuit to a position that: (a) departs from the statutory text; (b) loses sight of Congress's efforts in SLUSA to protect federalism interests; (c) selects a standard for SLUSA preemption that is difficult to administer and will produce arbitrary

results; and (d) takes special-interest legislation to extraordinary lengths. The opinions shelter the wrongful conduct of powerful financial institutions from the only viable means to enforce contractual and fiduciary duties.

We should instead apply the standard adopted in the Second, Third, and Ninth Circuits, which allows class actions under state contract and fiduciary law where the plaintiffs can prevail on their claims without proving the defendants engaged in deceptive misrepresentations or omissions. *In re Kingate Management Ltd. Litig.*, 784 F.3d 128, 149, 152 (2d Cir. 2015); *Freeman Investments*, 704 F.3d at 115–16; *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008).

I.    *SLUSA: The Securities Fraud Core and the Issue of Expansion to Contract Claims*

The general story of "SLUSA," the acronym for the Securities Litigation Uniform Standards Act of 1998, is well known. In 1995, Congress enacted stringent new pleading standards for private federal securities fraud litigation in the Private Securities Litigation Reform Act. Securities plaintiffs and their lawyers responded to the 1995 Act by bringing securities fraud claims involving securities traded on national markets in state courts under state law.

Congress enacted SLUSA to prevent such avoidance of the standards of the 1995 Act. See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006). SLUSA includes provisions in 15 U.S.C. §§ 77p(b) and 78bb(f)(1) to bar plaintiffs from using fraud class actions under state statutes or common law in connection with the purchase or sale of a security traded on a national exchange. In that core application, SLUSA seems to be working. The controversial question is

whether SLUSA preemption reaches so far as to bar class ac-
tions asserting not fraud but only state-law claims for breach
of contract or breach of fiduciary duty. If it does, then defend-
ants can manage some extraordinary feats of legal jiu-jitsu to
avoid liability for wrongdoing:

Start with a plaintiff, a customer of a bank or securities
firm, who believes that she and other customers are the vic-
tims of systematic breaches of contract and fiduciary duty. She
knows she does not have a viable claim under federal securi-
ties law or for common-law fraud. She files a class action in
state court under state contract and fiduciary law. The defend-
ant removes to federal court and argues for dismissal under
SLUSA. The jiu-jitsu move is that the defendant then em-
braces a sweeping approach to federal securities law. It argues
that the plaintiff *could* assert a securities fraud claim (though
perhaps a fatally flawed one), that that's what she must really
be doing, and that only her artful pleading conceals that
claim. If this logical flip works, SLUSA requires dismissal of a
perfectly good contract claim.

In our prior SLUSA cases, we have taken care to leave
room for state-law claims for breach of contract, at least. See
*Kurz v. Fidelity Management & Research Co.*, 556 F.3d 639, 640
(7th Cir. 2009). By extending SLUSA preemption to dismiss
the state-law class actions in *Goldberg* and *Holtz*, my col-
leagues effectively immunize a favored category of defend-
ants—banks and securities businesses—from liability for their
breaches of contract and fiduciary duty. That is an erroneous
interpretation of SLUSA.

The critical statutory language describes which state-law
class actions are not permitted:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) *a misrepresentation or omission of a material fact* in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). The key phrase in (A), "alleging a misrepresentation or omission of a material fact," is of course the language of fraud and negligent misrepresentation, and (B) also echoes the prohibitions of federal securities law.

How might one transform a complaint alleging only breach of contract and breach of fiduciary duty into one "alleging a misrepresentation or omission of a material fact"? The problem is that parties who disagree about the meaning of their contract will often believe and allege that the counter-party has told them something that is not true or has failed to disclose something, such as that party's different interpretation of the contract. Also, a fiduciary owes a beneficiary a duty of candor, see generally Restatement (Third) of Trusts §§ 82 (duty to provide information), 109 (duty to account for principal and income). A breach of that duty can look a lot like an "omission of a material fact."

II. *The Circuit Split*

How should a court apply SLUSA to such class action complaints alleging state-law claims for breaches of contract

and fiduciary duty? This question has produced at least a three- or four-way circuit split.

Since the 2012 oral argument in this case, the Second and Ninth Circuits have adopted the approach that I believe is best: a class action claim is barred by SLUSA only if the plaintiff's claim requires proof of a misrepresentation or omission of material fact. This approach avoids both the risks of artful pleading by plaintiffs and the jiu-jitsu move by defendants. It bars claims that are, in substance, for fraud or negligent misrepresentation yet allows contract and fiduciary claims to go forward. This approach is most consistent with the statute's text and purposes, and it is administrable and fair.[1]

In *Freeman Investments, L.P. v. Pacific Life Ins. Co.*, 704 F.3d 1110 (9th Cir. 2013), the defendant had sold variable universal life insurance policies to the plaintiffs. The plaintiffs alleged that the defendant had breached their contracts and a duty of good faith and fair dealing by charging policyholders an excessive "cost of insurance." The original complaint had included allegations of systematic concealment and deceit involving hidden fees. Those allegations provided fuel for the defendants' argument that these were allegations of misrepresentations and omissions of material facts so that SLUSA should apply. The district court agreed and dismissed.

In an opinion by then-Chief Judge Kozinski, the Ninth Circuit reversed, explaining that SLUSA preemption should depend on what the plaintiffs would be *required* to show to prove their claims:

---

[1] The recent Second and Ninth Circuit cases explain why my description of the circuit split differs from that in Judge Flaum's concurrence.

> *To succeed on this* [*contract*] *claim, plaintiffs need
> not show that Pacific misrepresented the cost of in-
> surance or omitted critical details.* They need only
> persuade the court that theirs is the better read-
> ing of the contract term. *See Yount v. Acuff Rose–
> Opryland*, 103 F.3d 830, 836 (9th Cir. 1996).
> "[W]hile a contract dispute commonly involves
> a 'disputed truth' about the proper interpreta-
> tion of the terms of a contract, that does not
> mean one party omitted a material fact by fail-
> ing to anticipate, discover and disabuse the
> other of its contrary interpretation of a term in
> the contract." *Webster v. N.Y. Life Ins. and Annu-
> ity Corp.*, 386 F. Supp. 2d 438, 441 (S.D.N.Y.
> 2005). Just as plaintiffs cannot avoid SLUSA
> through crafty pleading, *defendants may not re-
> cast contract claims as fraud claims by arguing that
> they "really" involve deception or misrepresentation.
> Id.; see also Walling v. Beverly Enters.*, 476 F.2d
> 393, 397 (9th Cir. 1973) ("Not every breach of a
> stock sale agreement adds up to a violation of
> the securities law.").

704 F.3d at 1115–16 (emphasis added).

In *Kingate Management*, 784 F.3d 128, the Second Circuit adopted essentially the same approach in a complex case against some of the "feeder funds" for Bernie Madoff's Ponzi scheme. The plaintiffs asserted 28 claims, which the Second Circuit organized in five groups. Most relevant for our purposes are the "Group 4" and "Group 5" claims for breaches of contract and fiduciary duty and other non-fraud tort theories, and for recovery of professional fees that were calculated in

error or charged for services performed poorly. The district court had dismissed the entire case under SLUSA.

The Second Circuit reversed in a thorough opinion by Judge Leval. SLUSA preempted some claims alleging that the defendants themselves had engaged in fraudulent or negligent misrepresentations. SLUSA did not preempt the claims for breaches of contract or fiduciary duty or for fees. Those claims would not *require* the plaintiffs to prove that the defendants had misrepresented or omitted material facts, so they were not preempted by SLUSA. 784 F.3d at 151–52. Accord, *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008) (reversing dismissal; SLUSA preemption would not apply to breach of fiduciary duty claims unless allegation of misrepresentation operates as "factual predicate" for claim; extraneous allegations would not support SLUSA preemption) (Pollak, J.); *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 387–88 (S.D.N.Y. 2004) (Lynch, J.) ("Plaintiffs' claim is simply that Salomon said it would do something in exchange for plaintiffs' fees, and then didn't do what it had promised. The fact that the actions underlying the alleged breach could also form the factual predicate for a securities fraud action by different plaintiffs cannot magically transform every dispute between broker-dealers and their customers into a federal securities claim—the mere 'involvement of securities [does] not implicate the anti-fraud provisions of the securities laws.'").

The Sixth Circuit takes a different approach. It does not consider whether allegations of fraud are required to prove the plaintiffs' contract claim: "[SLUSA] does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentations in connection with buying or selling securities. It asks whether the complaint includes these types of

allegations, pure and simple." *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009), quoted in *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 555 (6th Cir. 2011). This seemingly textual approach is not symmetrical, however. If the *plaintiff* has *omitted* allegations of fraud, the Sixth Circuit instructs district courts to treat the omission as artful pleading, to imply the toxic allegations, and to dismiss. *Atkinson*, 658 F.3d at 555, following *Segal*, 581 F.3d at 310–11.

Before today's decisions in *Holtz* and *Goldberg*, we applied a third standard for deciding when a contract or fiduciary claim might be preempted. In *Kurz v. Fidelity Management & Research*, 556 F.3d at 641, and *Brown v. Calamos*, 664 F.3d 123, 127 (7th Cir. 2011), we signaled that SLUSA would not preempt contract claims. In *Brown*, we addressed the problems I discuss here. We allowed considerably more room for contract class actions, but under a standard that is difficult to administer. *Brown* requires a court to look at a complaint and to prophesy whether "it is likely that an issue of fraud will arise in the course of the litigation." 664 F.3d at 128–29.

While I believe plaintiff should prevail here under the better rule adopted by the Second, Ninth, and Third Circuits, plaintiff should also prevail under *Brown*. Her breach of contract claim requires her to show only that the contract with the bank authorized certain fees and that the bank breached the contract by charging additional fees (in the form of retaining the "sweep fees" paid for the investment of plaintiffs' funds). There is no need for fraud to become an issue.

In both this case and *Holtz*, however, my colleagues go beyond the *Brown* standard and adopt a new, fourth standard that is different from any other circuit's approach. Under *Goldberg* and *Holtz*, now, virtually any breach of contract claim

is preempted. If the defendant had told the plaintiff what it was actually doing, the plaintiff's acquiescence could have been treated as a modification or waiver of the relevant contract terms. Thus can virtually any breach of contract claim by the customer of a securities firm be transformed into a doomed securities fraud claim that must be dismissed.

My colleagues offer a couple of interesting exceptions, though. One is for negligent breaches of contract, "by mistake." *Holtz*, — F.3d at — (slip op. at 7). Why the defendant's state of mind should matter to a breach of contract claim is not explained, as a matter of either contract law or federal securities law. SLUSA surely preempts claims for negligent misrepresentation as well as those for intentional fraud. (Recall that SLUSA preemption does not include a scienter requirement.) This proposed exception has no apparent basis in the text of SLUSA and seems entirely arbitrary.

The second exception is for breaches of contract that occur after a plaintiff has already invested her money, presumably because such a breach is not "in connection with" the purchase or sale of a covered security. While the statutory text seems to support this exception, it is likely to have little meaning. In this case, for example, if the bank's retention of the sweep fees was a breach of contract, it happened *every day*, and "in connection with" the bank's purchases and sales of the securities with plaintiff's capital. In any event, the limited scope of this exception will surely produce arbitrary results.[2]

---

[2] Circuits have also divided on two related procedural questions: whether SLUSA preemption should be analyzed and applied to the entire civil action or claim-by-claim, and whether a plaintiff whose complaint or claim is deemed preempted should have any opportunity to amend the pleading to cure the problem. Compare, e.g., *Kingate*, 784 F.3d at 152–53

III. *The Merits of Preempting Contract Claims*

Only the Supreme Court can settle this three- or four-way circuit split. The Second Circuit's opinion in *Kingate*, the Ninth's in *Freeman*, and the Third's in *Bordier* explain well why the best approach to this preemption problem is to ask whether the plaintiffs would be required to prove a misrepresentation or omission of a material fact. I offer a few additional thoughts prompted by my colleagues' opinions in this case and *Holtz*.

First, my colleagues take statutory purpose too far. The core of their thinking appears in *Holtz*: "Allowing plaintiffs to avoid [SLUSA] by contending that they have 'contract' claims about securities, rather than 'securities' claims, would render [SLUSA] ineffectual, because almost all federal securities suits could be recharacterized as contract suits about the securities involved." — F.3d at — (slip op. at 4).

My colleagues have lost sight of a point that we and the Supreme Court have made repeatedly: "no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular

---

(applying SLUSA preemption claim-by-claim), with *Atkinson*, 658 F.3d at 555–56 (in dicta, one preempted claim requires dismissal of entire case); also compare, e.g., *Freeman*, 704 F.3d at 1116 (allowing amendment), and *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 842–43 (9th Cir. 2007) (allowing amendment), with *Brown*, 664 F.3d at 131 (not allowing amendment). I agree with the claim-by-claim approach and allowing plaintiffs who can avoid SLUSA preemption to do so by amendment. Especially under post-*Iqbal* federal civil pleading standards, plaintiffs have strong incentives to say more than is necessary in their complaints. Alleging a little more than necessary should not be fatal.

objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987); see also, e.g., *Board of Governors of Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 373–74 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action. Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises."); *Covalt v. Carey Canada, Inc.*, 860 F.2d 1434, 1439 (7th Cir. 1988) ("Courts do not strive for 'more' of all legislative objectives, however; laws have both directions and limits, and each must be scrupulously honored.").

We have made the same point more colorfully, in a way that applies directly here: "When special interests claim that they have obtained favors from Congress, a court should ask to see the bill of sale. Special interest laws do not have 'spirits,' and it is inappropriate to extend them to achieve more of the objective the lobbyists wanted." *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 671 (7th Cir. 1992).

The banks and securities businesses that won passage of SLUSA did not win a broad preemptive provision for all class action claims that might be made in connection with purchases or sales of covered securities. They certainly did not win passage of language preempting state-law claims for breach of contract or fiduciary duty. The enacted language

preempts covered class action claims that allege "a misrepresentation or omission of material fact." That language obviously calls to mind the law of fraud and (because there is no mention of scienter) negligent misrepresentation. See also *Chadbourne & Parke LLP v. Troise*, 571 U.S. —, —, 134 S. Ct. 1058, 1068–69 (2014) (rejecting purpose-based efforts to expand reach of SLUSA).

My colleagues' approach also fails to give effect to the federalism balance struck in SLUSA. As the Supreme Court pointed out in *Dabit*, the statute was drafted to preserve certain specific roles for state securities law and securities regulators. See *Dabit*, 547 U.S. at 87–88, discussing 15 U.S.C. § 78bb(f)(3), (f)(4), & (f)(5)(C); see also 15 U.S.C. § 77p (parallel provisions under 1933 Securities Act). The *Dabit* Court noted that including these explicit "carve-outs" for state law "both evinces congressional sensitivity to state prerogatives in this field and makes it inappropriate for courts to create additional, implied exceptions." *Id.* (rejecting implied exception for fraud claims alleging inducement *not* to sell or purchase securities); accord, *Chadbourne & Parke*, 571 U.S. at —, 134 S. Ct. at 1068–69 (interpreting SLUSA to respect its limits and to preserve roles for state law and state courts).

That same federalism balance should persuade federal courts not to find in SLUSA implied authority to sweep up claims arising only under state law of contract and fiduciary duty. The Congress that took such care to leave room for certain state securities laws and enforcement powers would be surprised by these decisions. It would be surprised to learn that federal courts are reading the statute to give special priv-

ileges to banks and securities businesses by preventing effective enforcement against them of such core areas of state law as contract and fiduciary law.[3]

My colleagues' expansive reading of SLUSA also conflicts with the Supreme Court's approach to a closely related federalism issue in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. —, 136 S. Ct. 1562 (2016). The issue in *Manning* was whether section 27 of the Securities Exchange Act of 1934, which grants exclusive federal jurisdiction over actions "brought to enforce" Exchange Act requirements, extends to a complaint that is filed in state court and alleges only state-law claims, but mentions federal securities law. The unanimous Court said no, holding that the standard under section 27 is the same as the "arising under" rule for federal question jurisdiction under 28 U.S.C. § 1331, so that it applies when federal law creates the cause of action asserted and in a narrow category of cases where a state-law claim will necessarily

---

[3] My colleagues find support for their expansive treatment of SLUSA in *Northwest, Inc. v. Ginsberg*, 572 U.S. —, 134 S. Ct. 1422 (2014), which held that a state-law claim against an airline for breaching an implied covenant of good faith and fair dealing was preempted by the Airline Deregulation Act. See *Holtz*, — F.3d at — (slip op. at 4–5). The simple answer to this argument is that the preemptive language in the Airline Deregulation Act is much broader than the relevant language in SLUSA. The Airline Deregulation Act provides that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (emphasis added). To the extent *Northwest* is relevant here, it might affect only plaintiff's fiduciary duty claim, not her claim that the bank simply breached the fee provision of the written contract by charging extra fees not authorized by the contract.

raise a disputed and substantial issue of federal law. 578 U.S. at —, 136 S. Ct. at 1569–70.

Most salient for these cases is the Court's federalism reasoning. 578 U.S. at —, 136 S. Ct. at 1573–75 (Part II-C). The Court warned against reading grants of exclusive federal jurisdiction too broadly, so as to interfere with state law and state courts:

> Out of respect for state courts, this Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires. We have reiterated the need to give "[d]ue regard [to] the rightful independence of state governments" — and more particularly, to the power of the States "to provide for the determination of controversies in their courts." *Romero*, 358 U.S., at 380 (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941)). Our decisions, as we once put the point, reflect a "deeply felt and traditional reluctance ... to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes." *Romero*, 358 U.S., at 379. That interpretive stance serves, among other things, to keep state-law actions like Manning's in state court, and thus to help maintain the constitutional balance between state and federal judiciaries.

578 U.S. at —, 136 S. Ct. at 1573.

*Manning* shows that Congress must use clear language if it intends to order federal courts to intrude into long-established realms of state law and state courts. The statutory language and standards in these cases are not identical, of course, but *Manning* was enforcing limits on a grant of exclusive federal jurisdiction. The Court explained that "it is less troubling for a state court to consider such an issue of [federal securities law] than to lose all ability to adjudicate a suit raising only state-law causes of action." 578 U.S. at —, 136 S. Ct. at 1574. In *Manning* itself, the state-law complaint actually mentioned the federal securities laws but did not rely upon them for relief. The Court rejected Merrill Lynch's argument, akin to my colleagues' approach here and in *Holtz*, that a judge should go beyond the face of the complaint and find "artful pleading," leaving no room for state law in the case simply because the plaintiff might have tried to assert a claim under federal law, but did not. Proper respect for the role of states and their laws should lead us to reject the similar attempted expansion of SLUSA preemption in this case and *Holtz*.

Finally, the rule of the Second, Ninth, and Third Circuits also has the benefit of being easier to administer fairly. As noted, our earlier *Brown* opinion requires judges to be prophets, looking at complaints and predicting whether fraud is likely to be an issue. The more expansive approach taken in this case and *Holtz* will likely produce results that are unpredictable, unfair, or both. When the defendants in *Manning* suggested a similar approach, the Supreme Court said it had "no idea how a court would make that judgment" and said that avoiding this "tortuous inquiry into artful pleading is one more good reason to reject" the approach. 578 U.S. at —, 136 S. Ct. at 1575.

We should focus instead on whether a misrepresentation or omission of material fact is an element of the plaintiff's cause of action, as the Second and Ninth Circuits did in *Kingate* and *Freeman*. This would provide a straightforward standard consistent with the statutory language of fraud—"a misrepresentation or omission of a material fact." It can be applied fairly at the pleading stage, preventing both truly artful pleading by plaintiffs and unfair recasting of contract and fiduciary claims as securities claims.