**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FREEMAN INVESTMENTS, L.P.;
DARREL FREEMAN IRREVOCABLE
TRUST; FREEMAN JOINT
IRREVOCABLE TRUST, individually
and on behalf of a class of others
similarly situated; DAVID KEMP,
Trustee of the Darrel L. Freeman
Irrevocable Trust, individually and
on behalf of a class of others
similarly situated; DAVID KEMP,
Trustee of the Freeman Irrevocable
Trust, individually and on behalf of a
class of others similarly situated,
              *Plaintiffs - Appellants*,

                    v.

PACIFIC LIFE INSURANCE COMPANY,
              *Defendant - Appellee*.

No. 09-55513

D.C. No.
8:08-cv-01134-
DOC-AN

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
June 5, 2012–Pasadena, California

Filed January 2, 2013

Before:  Alex Kozinski, Chief Judge, Stephen S. Trott,
and Sidney R. Thomas, Circuit Judges.

Opinion by Chief Judge Kozinski

## SUMMARY[*]

### Securities Litigation Uniform Standards Act of 1998

The panel affirmed in part and reversed in part the district court's dismissal of a class action as precluded by the Securities Litigation Uniform Standards Act.

SLUSA precludes state law class actions that allege misrepresentations or fraudulent omission in connection with the purchase or sale of covered securities.  In this case, appellants purchased variable universal life insurance policies (under which the policy holder bears risks associated with the investment of premiums), and alleged various state law claims against their insurer.

The panel held that the class claims for breach of contract and breach of the duty of good faith and fair dealing were not precluded by SLUSA, even if such claims related to the purchase or sale of a covered security, because these contract claims did not rest on misrepresentation or fraudulent omission.  The panel reversed the district court's dismissal of these two contract claims, on the condition that plaintiffs amend their complaint to remove any reference to deliberate

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

concealment or fraudulent omission. The panel affirmed the dismissal of the class claim for unfair competition in violation of California law. The panel remanded with instructions that the district court grant leave for appellants to file an amended complaint.

## COUNSEL

Lee A. Sherman, Callahan Thompson Sherman & Caudill LLP, Tustin, California; Stephen R. Miller and John J. Schirger, Miller Schirger LLC, Kansas City, Missouri; and Patrick J. Stueve and Richard M. Paul III (argued), Stueve Siegel Hanson LLP, Kansas City, Missouri, for Plaintiffs-Appellants.

James C. Martin (argued), Robert D. Phillips Jr., Thomas A. Evans and David J. Bird, Reed Smith LLP, San Francisco, California, for Defendant-Appellee.

## OPINION

KOZINSKI, Chief Judge:

The Securities Litigation Uniform Standards Act of 1998 (SLUSA) precludes state law class actions that allege misrepresentation or fraudulent omission in connection with the purchase or sale of covered securities. In this case we answer the question on everyone's lips: Does SLUSA displace class actions alleging breach of a variable universal life insurance contract?

## I.  BACKGROUND

Plaintiffs purchased variable universal life insurance policies from defendant Pacific Life Insurance Company. Variable universal insurance differs in important ways from term life insurance, which protects against risk of death for a finite period and provides no continuing benefit once that time expires.  *See* American Council of Life Insurers, *Life Insurance Fact Book* 64 (2011).  Variable universal insurance lasts for the duration of the policyholder's life and allows him to share in the gains (or losses) generated by the investment of premiums.   A policyholder may borrow against the accumulated value of his variable universal policy, or cash out the accumulated value by surrendering the policy while he's alive.

Pacific guarantees its customers a minimum insurance benefit, and policyholders also allocate a portion of their premiums to a separate account whose value fluctuates over time.[1]  Policyholders choose from various investment options within the separate account, and Pacific invests the assets into corresponding portfolios of the Pacific Select Fund.   The death benefit payable to survivors varies with the performance of the funds each customer selects.  Because the policyholder bears the risk associated with the investments, our sister circuits have held that the variable universal policy qualifies as a security regulated by federal law.  *See Herndon*

---

[1] Pacific must shield funds in the separate account from its general liabilities and expenses, and use it only to fund the variable universal insurance contracts.    *See* 15 U.S.C. § 80a–2(a)(37); 17 C.F.R. § 270.0–1(e).  The separate account is registered with the Securities and Exchange Commission as a unit investment trust under the Investment Company Act of 1940.  *See Prudential Ins. Co. of Am.* v. *SEC*, 326 F.2d 383, 388 (3d Cir. 1964).

v. *Equitable Variable Life Ins. Co.*, 325 F.3d 1252, 1253 (11th Cir. 2003) (per curiam); *see also Lincoln Nat'l Life Ins. Co.* v. *Bezich*, 610 F.3d 448, 451 (7th Cir. 2010).[2]

Each month, Pacific assesses a "cost of insurance" charge, which it collects by redeeming units of the separate account. Plaintiffs accuse Pacific of levying excessive cost of insurance charges. They allege that "cost of insurance" is an industry term of art and that they understood the fee would be calculated according to industry standards. Second Am. Class Action Compl. ¶¶ 15–17. They brought a class action in federal district court alleging breach of contract, breach of the duty of good faith and fair dealing and unfair competition under California Business and Professions Code § 17200. *Id.* ¶¶ 33–45. They also claim that the statute of limitations should toll because Pacific concealed the magnitude of its charges in its quarterly statements. *Id.* ¶¶ 32, 43. Tolling would permit plaintiffs to seek restitution of charges assessed during the entire period they held the policy, some of which seems to go back beyond the limitations period.

Pacific moved to dismiss the complaint, arguing that the class action was precluded by SLUSA. The statute bars class actions brought under state law, whether styled in tort, contract or breach of fiduciary duty, that in essence claim misrepresentation or omission in connection with certain securities transactions. *See* 15 U.S.C. § 78bb(f)(1); *Segal* v.

---

[2] Plaintiffs don't dispute that variable universal policies are covered securities. We therefore have no cause to consider whether or not we agree with our sister circuits, though our precedent suggests we would. *See Patenaude* v. *Equitable Life Assurance Soc'y of the United States*, 290 F.3d 1020, 1022 (9th Cir. 2002) (holding a variable annuity issued by an insurance company to be a covered security), *abrogated on other grounds by Kircher* v. *Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006).

*Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009). The district court granted the motion, but only after twice giving plaintiffs leave to amend. Plaintiffs scrubbed their complaint of many (but not all) references to systematic concealment and deceitful conduct, but the district court concluded that the substance remained the same: "Such allegations of excessive charges, hidden loads and *concealment* clearly amount, at the least, to an allegation that Defendant *omitted* facts in connection with the purchase of securities, if not allegations of outright misrepresentations made by Defendant." We review de novo. *Proctor* v. *Vishay Intertechnology Inc.*, 584 F.3d 1208, 1218 (9th Cir. 2009).

## II. DISCUSSION

SLUSA is part of a series of reforms targeted at costly securities litigation. Congress first passed the Private Securities Litigation Reform Act of 1995 (PSLRA) to deter the filing of so-called strike suits—frivolous securities class actions that put defendants to the unappealing choice of settling claims, however meritless, or risking extravagant discovery and trial costs. *See* H.R. Conf. Rep. 104–369 (1995); Michael A. Perino, *Fraud and Federalism: Preempting Private State Securities Fraud Causes of Action*, 50 Stan. L. Rev. 273, 290–91 (1998). The statute imposed a number of procedural hurdles on federal securities class actions, including a heightened pleading requirement. *See* 15 U.S.C. § 78u–4(b); *Proctor*, 584 F.3d at 1217. But inventive lawyers found detours around these obstacles. By bringing state law class actions in state courts, they avoided the procedural steeplechase erected by the PSLRA. *See Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 81–82 (2006).

Equal to the challenge, Congress persisted by adopting SLUSA, which seeks to prevent state class actions alleging fraud "from being used to frustrate the objectives" of the PSLRA. *See* H.R. Conf. Rep. 105–803 (1998). SLUSA bars private plaintiffs from bringing (1) a covered class action (2) based on state law claims (3) alleging that defendant made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security. *See* 15 U.S.C. § 78bb(f)(1). Plaintiffs and Pacific agree that this case involves (1) a covered class action, (2) state law claims and (5) a covered security.[3] They hotly dispute the two remaining elements: Do the state law claims, no matter how labeled, in substance allege (3) misrepresentation or omission (4) in connection with the purchase or sale of securities?

## A. Misrepresentation or omission

In arguing that plaintiffs "allege numerous misrepresentations and omissions in furtherance of an inherently deceptive scheme," Pacific quotes extensively from the initial complaint, which accuses the company of "systematic concealment" and "deceitful conduct" designed "to generate undeserved revenues." As our sister circuits have recognized, the statute operates wherever deceptive statements or conduct form the gravamen or essence of the claim. *See Rowinski* v. *Salomon Smith Barney Inc.*, 398 F.3d 294, 299–300 (3rd Cir. 2005). Because we look to the

---

[3] A covered class action is one in which "damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. § 78bb(f)(5)(B). A covered security is one issued by an investment company registered under the Investment Company Act of 1940. *Id.* § 77r(b)(2).

substance of the allegations, plaintiffs cannot avoid preclusion "through artful pleading that removes the covered words . . . but leaves in the covered concepts." *Segal*, 581 F.3d at 311. Were it otherwise, "SLUSA enforcement would reduce to a formalistic search through the pages of the complaint for magic words—'untrue statement,' 'material omission,' 'manipulative or deceptive device'—and nothing more." *Id.* at 310.

Stripped to its essence, plaintiffs' latest complaint alleges that Pacific charged them too much for life insurance and, as a result, reduced the value of their investments. Specifically, they claim that "cost of insurance" is a term of art that refers to "the portion of premiums from each policyholder set aside to pay claims." Second Am. Class Action Compl. ¶ 15 (internal quotation marks and emphasis omitted). They allege that they expected Pacific to calculate the cost of insurance charge "based on industry accepted actuarial determinations," but the company deviated from industry norms and debited an amount "in excess of true mortality charges." *Id.* ¶¶ 16–17. Plaintiffs thus raise a dispute about the meaning of a key contract term, and the success of their claim will turn on whether they can convince the court or jury that theirs is the accepted meaning in the industry.[4] *See* Restatement (Second) of Contracts § 202(3)(b); Cal. Civ. Code § 1645. This is just like the "what is chicken?" case with which every first-year law student is familiar. *See Frigaliment Importing Co.* v.

---

[4] In California, interpretation of contract terms is a question of law for the court "unless the interpretation turns upon the credibility of extrinsic evidence," such as expert testimony. *Parsons* v. *Bristol Dev. Co.*, 402 P.2d 839, 842 (Cal. 1965) (Traynor, C.J.), *cited in United Commercial Ins. Serv., Inc.* v. *Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992).

*B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 117, 119 (S.D.N.Y. 1960) (Friendly, J.).

To succeed on this claim, plaintiffs need not show that Pacific misrepresented the cost of insurance or omitted critical details. They need only persuade the court that theirs is the better reading of the contract term. *See Yount* v. *Acuff Rose–Opryland*, 103 F.3d 830, 836 (9th Cir. 1996). "[W]hile a contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract." *Webster* v. *N.Y. Life Ins. and Annuity Corp.*, 386 F. Supp. 2d 438, 441 (S.D.N.Y. 2005). Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they "really" involve deception or misrepresentation. *Id.*; *see also Walling* v. *Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) ("Not every breach of a stock sale agreement adds up to a violation of the securities law.").

Nor do plaintiffs make a stealth allegation of fraudulent omission with their tolling argument. Plaintiffs seek restitution for cost of insurance charges made during the entire period they held their insurance policies, even that part foreclosed by the statute of limitations. To reach those older charges, they argue that the statute should toll because Pacific "knowingly and actively concealed" the excessive charges and kept its customers "ignorant of information essential to the pursuit of these claims." Second Am. Class Action Compl. ¶ 32. The complaint makes two distinct allegations, that Pacific (1) breached the contract and then (2) hid the breach. The latter doesn't corrupt the former, turning it into

a claim of fraudulent omission. The breach and tolling arguments are perfectly consistent: If the parties disagreed about the meaning of "cost of insurance," as plaintiffs allege, Pacific may well have believed there was no breach to disclose.

All the same, plaintiffs would be wise to rid their complaint of the allegations of active concealment. In California, the statute of limitations period does not commence until plaintiffs have a reasonable way of detecting the breach. *See El Pollo Loco, Inc.* v. *Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003). This "discovery rule" applies even if the defendant didn't engage in fraud or concealment. *See Gryczman* v. *4550 Pico Partners, Ltd.*, 131 Cal. Rptr. 2d 680, 682 (Cal. Ct. App. 2003). On remand, the district court shall give plaintiffs leave to amend their complaint for a third time to eliminate references to hidden loads, knowing concealment and wrongful conduct. These concepts are irrelevant to both the breach and the tolling claims, so there's no reason to risk tainting any eventual verdict by including references to fraud or misrepresentation.

In sum, the breach of contract claim survives SLUSA, as does the class claim for breach of the duty of good faith and fair dealing, itself a species of contract claim. But California Business & Professions Code § 17200, on which plaintiffs base a separate claim, defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." This claim doesn't survive SLUSA unless the charged conduct didn't occur "in connection with" the purchase or sale of a covered security.

**B. In connection with the purchase or sale of a covered security**

Misrepresentation occurs "in connection with" the purchase or sale of a covered security if "the fraud and the stock sale coincide or are more than tangentially related." *Madden* v. *Cowen & Co.*, 576 F.3d 957, 966 (9th Cir. 2009) (internal quotation marks omitted). While this language is capacious, it doesn't reach all transactions in which securities play a role, however incidental. *See SEC* v. *Zandford*, 535 U.S. 813, 820 (2002). "The fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves. While the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction." *Falkowski* v. *Imation Corp.*, 309 F.3d 1123, 1130–31 (9th Cir. 2002) (internal quotation marks and brackets omitted), *abrogated on other grounds by Kircher* v. *Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006).

A variable universal life insurance policy is a "hybrid" creature that has "characteristics of both insurance products and investment securities." *Patenaude* v. *Equitable Life Assurance Soc'y of the United States*, 290 F.3d 1020, 1027 (9th Cir. 2002) (internal quotation marks omitted) (addressing variable annuities), *abrogated on other grounds by Kircher*, 547 U.S. at 636 n.1. In some cases, plaintiffs may raise claims that survive SLUSA because they target only the insurance features of the policy. *Cf. Ring* v. *AXA Financial, Inc.*, 483 F.3d 95, 99–101 (2d Cir. 2007). But not here. Pacific collects the cost of insurance charge by redeeming units of the separate account, which itself holds investments in the Pacific Select Fund. According to the policy's

prospectus, "Unless you tell us otherwise, we deduct the monthly charge from the investment options that make up your policy's accumulated value, in proportion to the accumulated value you have in each option." Each inflated charge not only "coincides" with the sale of securities; it also depletes the value of the investment. A fund subject to higher fees and charges will, over time, have a lower value than a fund subject to more modest charges. *Cf. Behlen* v. *Merrill Lynch*, 311 F.3d 1087, 1094 (11th Cir. 2002). To the extent plaintiffs allege that Pacific engaged in fraud or misrepresentation that drained their investments, SLUSA stands in the way.

Plaintiffs in fact allege that the "wrongfully diverted funds . . . reduced Policy values" and thereby worked to their "financial detriment." Second Am. Class Action Compl. ¶¶ 21–22. Essentially, they claim that Pacific harmed them by fraudulently debiting funds that would otherwise have been invested in securities. The Supreme Court instructs us to construe SLUSA's "in connection with" language broadly, "not technically and restrictively." *Zandford*, 535 U.S. at 819 (internal quotation marks omitted). We conclude that the conduct charged in the complaint satisfies this standard.

Plaintiffs argue that the "in connection with" requirement is satisfied only if they "bought or sold a security in reliance on misrepresentations as to its value." Appellants' Br. 18 (emphasis omitted) (quoting *Araujo* v. *John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 383 (E.D.N.Y. 2002)). They claim that on the day they purchased the variable universal policy, they "initially received the policy as represented" and were defrauded only later when Pacific started deducting excessive fees. *Id.* Most likely they derive this argument from *Blue Chip Stamps*, where the Supreme Court held that only

purchasers and sellers of securities have standing to bring a private securities fraud action.  *See Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 731–32, 749 (1975).  But the Court has also said that SLUSA may bar state law class actions even if plaintiffs can't satisfy that standing requirement, and thus wouldn't have a federal securities claim.  *See Dabit*, 547 U.S. at 88–89.

In *Dabit*, the defendant circulated misleading research that distorted stock prices and lulled plaintiffs into holding overvalued investments they would have been wise to unload.  *Id.* at 75.   The Court held the "in connection with" requirement satisfied even though the plaintiffs engaged in no active trading.  "Under our precedents," the Court said, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or someone else."  *Id.* at 85; *see also Carpenter* v. *United States*, 484 U.S. 19, 24 (1987) (plurality).

Every time Pacific collected the allegedly inflated cost of insurance charge, it sold securities to generate the funds.  Because the insurer's alleged fraud "coincided" with the sale of securities, it doesn't matter that the policyholders didn't themselves redeem the securities.  The "in connection with" requirement is satisfied.

## C.  Individual claims

Plaintiffs argue that the district court erred in dismissing their complaint with prejudice because, even if SLUSA prevents them from proceeding as a class, they should be free to pursue their claims as individuals.  As they correctly note, SLUSA isn't a complete bar to state law claims that sound in fraud.  The statute only "denies plaintiffs the right to use the

class-action device to vindicate" those claims. *Dabit*, 547 U.S. at 87. If plaintiffs presented viable individual claims, the district court should have dismissed them without prejudice so that plaintiffs might bring them in state court. *See Segal*, 581 F.3d at 312.

But Pacific tells us that plaintiffs never asserted individual claims, and instead brought their complaint solely as a class action. The complaint is ambiguous on that score. In the very first line, plaintiffs declare that they're proceeding "individually and on behalf of all others similarly situated." The Eighth Circuit recently held that similar language, coupled with factual allegations specific to the named plaintiffs, "distinctly makes out individual claims" separate from the class claims. *McCrary* v. *Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1057–58 (8th Cir. 2012). But in our case plaintiffs twice identify their case as a class action without referencing any individual claims. Second Am. Class Action Compl. ¶¶ 1, 6. They also fail to allege that their individual claims, standing alone, would satisfy the amount in controversy requirement for federal diversity jurisdiction, asserting only that they meet the $5 million threshold for class actions. *Id.* ¶ 6.

We need not decide whether plaintiffs pleaded individual claims; we'll assume they did not. But if that's the case, we see no merit to the insurer's argument that plaintiffs forfeited those claims by failing to seek leave to amend their complaint and plead such claims while the motion to dismiss was pending. Because we're remanding for plaintiffs to amend their complaint on other grounds, there's no reason they can't also amend to pursue their claims as individuals, if they so choose. *See Smith* v. *Pacific Props. and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (noting that leave to amend should

be freely given, except in cases of bad faith, undue delay or prejudice to the opposing party).

## III.    CONCLUSION

The class claims for breach of contract and breach of the duty of good faith and fair dealing are not precluded by SLUSA, even if such claims relate to the purchase or sale of a covered security.   Plaintiffs allege that their insurer promised one thing and delivered another.   That's a straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission.   We therefore reverse the district court's dismissal of the two contract claims, on the condition that plaintiffs amend their complaint to remove any reference to deliberate concealment or fraudulent omission.   We affirm the dismissal of the class claim for unfair competition in violation of California law.

We remand with instructions that the district court grant leave for plaintiffs to file an amended complaint consistent with our opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

**NO COSTS.**