In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2609

PATRICIA HOLTZ, *et al.*,

*Plaintiffs-Appellants*,

*v.*

JPMORGAN CHASE BANK, N.A., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 7080 — **John W. Darrah**, *Judge*.

ARGUED APRIL 2, 2014 — DECIDED JANUARY 23, 2017

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. JPMorgan Chase Bank offers to manage clients' portfolios of securities. Its affiliates sponsor mutual funds in which these funds can be placed. We refer to JPMorgan Chase Bank and all of its affiliates collectively as "the Bank." According to the complaint in this case, customers invested in these mutual funds believing that, when recommending them as suitable vehicles, the Bank acts in clients' best interests (as its website proclaims). But

Patricia Holtz, on behalf of a class of other investors, alleges that the Bank gives its employees incentives to place clients' money in the Bank's own mutual funds, even when those funds have higher fees or lower returns than competing funds sponsored by third parties. Holtz maintains that the Bank violated its promises and its fiduciary duties by inducing its investment advisers to make recommendations in the Bank's interest rather than the clients'.

Holtz filed this suit in federal court under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the class has more than 100 members, the stakes exceed $5 million, and at least one member of the class has citizenship different from the Bank's. This suit is also a "covered class action" for the purpose of the Securities Litigation Uniform Standards Act of 1998 (SLUSA or the Litigation Act), 15 U.S.C. §78bb(f), because mutual funds are securities. SLUSA requires the district court to dismiss any "covered class action" in which the plaintiff alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" (§78bb(f)(1)(A)). Under SLUSA, securities claims that depend on the nondisclosure of material facts must proceed under the federal securities laws exclusively. See, e.g., *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006); *In re Mutual Fund Market-Timing Litigation*, 468 F.3d 439 (7th Cir. 2006) (*Kircher IV*). Holtz does not want to invoke federal law and framed her claims entirely under state contract and fiduciary principles. But the district court concluded that these claims necessarily rest on the "omission of a material fact" and dismissed the suit under SLUSA. 2013 U.S. Dist. LEXIS 90066 (N.D. Ill. June 26, 2013).

Holtz maintains that falsehoods and omissions have nothing to do with her claims. She tells us that they "are not in any way based on, dependent upon, or necessarily entangled with proof that [the Bank] made any false statements or omitted to disclose material information. Rather, [she] assert[s] simply that [the Bank] failed to provide the independent research, financial advice, and due diligence required by the parties' contract and their fiduciary relationship." The district court's problem with this contention—our problem too—is that the suit depends on Holtz's assertion that the Bank concealed the incentives it gave its employees. If it had told customers that its investment advisors were compensated more for selling the Bank's mutual funds than for selling third-party funds, plaintiffs would have no claim under either state or federal law. This means that nondisclosure is a linchpin of this suit no matter how Holtz chose to frame the pleadings.

We grant that the complaint omits any allegation of *scienter*, which is essential in private securities-fraud litigation. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976). Yet the Litigation Act does not ask what state-law theory a plaintiff invokes. The statutory question is whether plaintiff alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" (§78bb(f)(1)(A)). Whether the complaint pleads a particular state of mind is neither here nor there—a point we made in *Brown v. Calamos*, 664 F.3d 123, 126–27 (7th Cir. 2011), when holding that an investor cannot avoid the Litigation Act by omitting an allegation of *scienter* and attempting to frame common-law claims under state law. Every other circuit that has addressed the question likewise has held that a plaintiff

cannot sidestep SLUSA by omitting allegations of *scienter* or reliance. See *Miller v. Nationwide Life Insurance Co.*, 391 F.3d 698, 701–02 (5th Cir. 2004); *Atkinson v. Morgan Asset Management, Inc.*, 658 F.3d 549 (6th Cir. 2011); *Dudek v. Prudential Securities, Inc.*, 295 F.3d 875, 879–80 (8th Cir. 2002); *Anderson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008).

*Dabit* concluded that the Litigation Act is designed to prevent persons injured by securities transactions from engaging in artful pleading or forum shopping in order to evade limits on securities litigation that are designed to block frivolous or abusive suits. See 547 U.S. at 81–84. See also *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 615 (7th Cir. 2012). Private class-action litigation about securities transactions must be conducted under federal securities law, so that limits adopted by Congress, or recognized by the Supreme Court, can be applied. Allowing plaintiffs to avoid the Litigation Act by contending that they have "contract" claims about securities, rather than "securities" claims, would render the Litigation Act ineffectual, because almost all federal securities suits could be recharacterized as contract suits about the securities involved.

Federal law often permits genuine contract claims to survive preemption. So, for example, a contract requiring an investment manager to keep funds in an interest-bearing account pending the purchase of new securities could proceed under state law—if the manager by error failed to invest the money properly, or if a decision to break the promise occurred after the promise had been made and the money invested. (The significance of these qualifications will become clear later on.) But Holtz has not alleged that the Bank creat-

ed the hidden conflict of interest only after she had invested her money.

The possibility that plain vanilla contract claims can proceed under state law creates an incentive to characterize all securities claims as "contract" suits and avoid federal preemption. Here's an example drawn from the Airline Deregulation Act, which preempts suits under state law that concern the price or quality of air service, see 49 U.S.C. §41713, but permits suits that rest on contracts. That sets up an opportunity for artful pleading. The plaintiff in *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422 (2014), conceded that when excluding him from its frequent-flyer program the airline had followed the letter of its contract but contended that it had nonetheless not engaged in good faith and fair dealing. The Court recognized that good faith and fair dealing is a longstanding doctrine of state contract law but held that it does not constitute a "contract" claim for the purpose of the Airline Deregulation Act. The Justices held that a claim "is pre-empted if it seeks to enlarge the contractual obligations that the parties voluntarily adopt." *Id*. at 1426. If the state-law duty is independent of the contract's terms, then it does not rest on contract.

Much the same can be said about Holtz's claims. She does not point to any explicit term that the Bank violated; instead she relies (as Ginsberg did) on a state-law duty to treat the other party fairly. That's what a fiduciary claim is all about. Indeed, Holtz contends that it is not even *possible* under state law to contract out of this duty—that is why Holtz submits that the Bank could not have reserved the right to favor its own interests over those of investors (at least not without explicit disclosure). Holtz uses this sup-

posed non-negotiable fiduciary duty to show why, in her view, the suit does not depend on nondisclosure. But if the duty is non-negotiable, then under *Northwest* it is also non-contractual.

In *Dabit*, as in this case, the plaintiff tried to recharacterize as a state-law contract claim a situation that securities law sees as a nondisclosure claim. A mutual fund issued a prospectus asserting that the fund was operated in a way that held down transactions costs. Plaintiffs alleged that the fund broke this promise by secretly allowing some investors to make short-swing trades in order to take advantage of price differences between the closing price in one nation and the price elsewhere, where stock exchanges closed at different times. Allowing short-swing trades not only increased transactions costs but also diverted wealth from long-term holders to the arbitrageurs. Plaintiffs maintained that they had contract claims, based on promises in the prospectus and other documents the fund had issued; the Supreme Court held, however, that because claims based on false statements in (or material omissions from) a prospectus are in connection with securities covered by federal law, it does not matter what state-law characterization might be possible. (*Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005) (*Kircher I*), explains the nature of the claim in *Dabit* more fully than the Justices did. In *Dabit* the Supreme Court expressly agreed with this circuit, 547 U.S. at 74, 86, and rejected the contrary view of the Second Circuit—though later it vacated *Kircher I* after concluding that this court had lacked appellate jurisdiction. 547 U.S. 633 (2006) (*Kircher III*).)

The sort of situation we encounter—in which one party to a contract conceals the fact that it planned all along to fa-

vor its own interests—is a staple of federal securities law. When one side in *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588 (2001), contended that a suit alleging a broken promise was a simple contract claim, the Supreme Court replied that making a promise with intent not to keep it is fraud, and that when the subject of the contract is a security the claim involves securities fraud. The link to securities law is equally strong for Holtz's contention that the Bank promised to recommend investments in her best interest, while intending all along to make recommendations in its own interest. We observed above that Holtz would have a contract claim free of a securities component if she alleged that the Bank broke its promise by mistake, or if the Bank created the incentive to favor its own mutual funds only after she had invested her money (which would take *Wharf* out of the picture). But she does not make either allegation.

A fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law. See *In re E.F. Hutton & Co.*, 49 S.E.C. 829 (1988) (the several opinions in that decision collect many of the important decisions). Likewise a broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem. See *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266 (3d Cir. 1998) (en banc). A broker-dealer that churns securities (makes trades to generate commissions rather than extra value for the customer) likewise has a securities problem in addition to a state-law contract and fiduciary duty problem. See *Costello v. Oppenheimer & Co.*, 711 F.2d 1361 (7th Cir. 1983). Or consider *United States v. Naftalin*, 441 U.S. 768 (1979): a short seller assured the broker that he owned

enough shares to deliver, but he did not and the sale therefore was a "naked short"; his lie was a breach of contract as well as fraud, and the Supreme Court held that it violated the Securities Act of 1934.

*E.F. Hutton* in particular shows that Holtz has a securities claim based on the Bank's (asserted) failure to disclose the conflict under which its employees were operating. Our decision in *Brown v. Calamos* reiterates the point. Plaintiffs alleged that managers of an investment fund pooled assets in a way that favored holders of preferred stock over holders of common stock. They presented this as a contract and fiduciary claim—which it was—but we thought that it was also a securities claim because it depended on nondisclosure of the procedures said to create the conflict. A statement along the lines of "we will act in your best interest" plus nondisclosure of a competing private interest is the basis of many securities actions. It is hard to see much difference between Holtz's theory and Brown's. After the Litigation Act, a plaintiff cannot proceed by omitting the securities theory and standing on state law in the sort of circumstances discussed in the preceding paragraph.

At oral argument, Holtz's lawyer told us that no sane person would have invested through the Bank had it revealed a bias for its own mutual funds—indeed, that the secret information contradicted the promise to act in investors' interest, and that the Bank never intended to keep its promise. All of this just brings the suit squarely within *Wharf*, which, recall, held that a concealed plan not to keep a promise about a securities transaction is securities fraud. Indeed, in *Brown* we rejected an argument that a plaintiff can avoid SLUSA by contending that no sane investor would have

purchased the security (or the investment advice) if the truth had been told, and that the suit therefore must be about substance rather than disclosure. 664 F.3d at 129.

Holtz has not pointed to any nondisclosure or fiduciary-duty claim concerning investments in securities, traded in interstate commerce, that is outside the scope of federal securities law. Sometimes a plaintiff will be unable to show a material lie or omission, intent to deceive, or the existence of a purchase or sale, and thus will not have a *winning* federal securities claim (even though he might have a good claim under state law), but *Dabit* holds that SLUSA applies whether or not a federal securities theory would succeed. Holtz's decision not to plead *scienter* means that she could not prevail under federal securities law, but as *Dabit* observes the Litigation Act would be ineffectual if it covered only winning securities claims. To protect defendants from weak or abusive claims of wrongdoing in connection with securities transactions, it is essential to block those that fail under federal law as well as those that could succeed.

Holtz has one more argument: that the Bank's omissions did not occur "in connection with" the purchase or sale of a covered security. The Litigation Act deals only with fraud or omissions in connection with covered securities. This branch of Holtz's argument rests on *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006), which holds that the Litigation Act does not block a suit concerning the terms on which shares of one company were exchanged for shares of another following a merger. AT&T acquired MediaOne in June 2000 and needed to issue new AT&T shares to persons who had held stock in MediaOne. Communications offered those investors several options for conducting the exchange. Worried that investors

who ignored these communications might find their investments subject to escheat, AT&T hired Georgeson Shareholder Communications six months after the merger closed and told Georgeson to do what it could to get investors to take the necessary steps. Georgeson sent letters that the plaintiffs later characterized as fraudulent for omitting the fact that, even long after the merger, people holding shares of MediaOne stock had one option that did not require payment of a fee for conducting the exchange.

As we saw matters in *Gavin*, the purchase or sale of securities was the merger in June 2000, not the ensuing swaps of certificates, so Georgeson's letter was not "in connection with" the sale of a covered security. *Gavin* does not assist Holtz, because the Bank's omission was made in connection with an impending investment decision (into which mutual fund would Holtz invest) rather than with a record-keeping decision. The Supreme Court held in *Dabit* that a decision *not* to sell a security (when influenced by a material misrepresentation or omission) is "in connection with" a purchase or sale of that security; the link between the secret fees to the Bank's employees and the choice of mutual funds is tighter than the link between the nondisclosure and non-sale in *Dabit*.

That some of the investment decisions were made by investment advisers as Holtz's agent does not take this out of the "in connection with" domain—otherwise suitability and churning could not be a securities theory. *SEC v. Zandford*, 535 U.S. 813 (2002), holds that the "in connection with" requirement is satisfied when a broker makes a purchase or sale as an investor's agent. That's equally true of transactions that the Bank made as Holtz's agent.

The Litigation Act does allow state-law claims in which the misrepresentations or omissions are not "material," see *Appert*, 673 F.3d at 616–17, but Holtz has not argued that the Bank's incentives to its employees were too small to be "material" under the standard of *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011), and its predecessors. An omission is "material" when a reasonable investor would deem it significant to an investment decision. Holtz herself deems the Bank's incentives material to investments; that's the basis of this suit.

If she wants to pursue a contract or fiduciary-duty claim under state law, she has only to proceed in the usual way: one litigant against another. The Litigation Act is limited to "covered class actions," which means that Holtz could litigate for herself and as many as 49 other customers. 15 U.S.C. §78bb(f)(5)(B)(i)(I). What she can't do is litigate as representative of 50 or more other persons when the suit involves "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security". If the Bank did wrong by its customers, the SEC could file its own suit (or open an administrative proceeding) without regard to the Litigation Act—and the Commission sometimes can obtain relief without showing *scienter*. See *Aaron v. SEC*, 446 U.S. 680 (1980). What's more, states and their subdivisions can litigate in state court; the Litigation Act exempts them. 15 U.S.C. §78bb(f)(3)(B). Thus there are plenty of ways to bring wrongdoers to account—but a class action that springs from lies or material omissions in connection with federally regulated securities is not among them.

AFFIRMED