HAMILTON, Circuit Judge,
dissenting.
“Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they ‘really’ involve deception or misrepresentation.” Freeman Investments, L.P. v. Pacific Life Ins. Co., 704 F.3d 1110, 1116 (9th Cir. 2013) (reversing dismissal of similar breach of contract case). That’s why we should reverse the dismissal of this complaint, which alleges only breach of contract and breach of fiduciary duty, not any form of fraud or negligent misrepresentation.
Plaintiffs breach of contract claim is simple: my contract with the bank spelled *921 out the fees the bank would charge for its services. The bank breached the contract by charging additional fees. Plaintiff can prove that claim without proving any misrepresentation or omission of material fact.
To affirm dismissal, however, my colleagues transform this simple claim for breach of contract into one of “omission of a material fact.” The “omitted fact” was that the bank was breaching the contract by charging the unauthorized fees. By this sort of reverse alchemy, my colleagues turn gold into lead. They use logic that other circuits have rejected and transform an ordinary state-law claim for breach of contract into a leaden and doomed claim under federal securities law. I respectfully dissent.
The opinions in this case and Holtz v. JPMorgan Chase Bank, N.A., 846 F.3d 928, widen an already existing circuit split under SLUSA. They also head in the wrong direction. They take our circuit to a position that: (a) departs from the statutory text; (b) loses sight of Congress’s efforts in SLUSA to protect federalism interests; (c) selects a standard for SLUSA preemption that is difficult to administer and will produce arbitrary results; and (d) takes special-interest legislation to extraordinary lengths. The opinions shelter the wrongful conduct of powerful financial institutions from the only viable means to enforce contractual and fiduciary duties.
We should instead apply the standard adopted in the Second, Third, and Ninth Circuits, which allows class actions under state contract and fiduciary law where the plaintiffs can prevail on their claims without proving the defendants engaged in deceptive misrepresentations or omissions. In re Kingate Management Ltd. Litig., 784 F.3d 128, 149, 152 (2d Cir. 2015); Freeman Investments, 704 F.3d at 1115-16; LaSala v. Bordier et Cie, 519 F.3d 121, 141 (3d Cir. 2008).
I. SLUSA: The Securities Fraud Core and the Issue of Expansion to Contract Claims
The general story of “SLUSA,” the acronym for the Securities Litigation Uniform Standards Act of 1998, is well known. In 1995, Congress enacted stringent new pleading standards for private federal securities fraud litigation in the Private Securities Litigation Reform Act. Securities plaintiffs and their lawyers responded to the 1995 Act by bringing securities fraud claims involving securities traded on national markets in state courts under state law.
Congress enacted SLUSA to prevent such avoidance of the standards of the 1995 Act. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 82, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006). SLUSA includes provisions in 15 U.S.C. §§ 77p(b) and 78bb(f)(l) to bar plaintiffs from using fraud class actions under state statutes or common law in connection with the purchase or sale of a security traded on a national exchange. In that core application, SLUSA seems to be working. The controversial question is whether SLUSA preemption reaches so far as to bar class actions asserting not fraud but only state-law claims for breach of contract or breach of fiduciary duty. If it does, then defendants can manage some extraordinary feats of legal jiu-jitsu to avoid liability for wrongdoing:
Start with a plaintiff, a customer of a bank or securities firm, who believes that she and other customers are the victims of systematic breaches of contract and fiduciary duty. She knows she does not have a viable claim under federal securities law or for common-law fraud. She files a class action in state court under state contract and fiduciary law. The defendant removes to federal court and argues for dismissal *922 under SLUSA. The jiu-jitsu move is that the defendant then embraces a sweeping approach to federal securities law. It argues that the plaintiff could assert a securities fraud claim (though perhaps a fatally flawed one), that that’s what she must really be doing, and that only her artful pleading conceals that claim. If this logical flip works, SLUSA requires dismissal of a perfectly good contract claim.
In our prior SLUSA cases, we have taken care to leave room for state-law claims for breach of contract, at least. See Kurz v. Fidelity Management & Research Co., 556 F.3d 639, 640 (7th Cir. 2009). By extending SLUSA preemption to dismiss the state-law class actions in Goldberg and Holtz, my colleagues effectively immunize a favored category of defendants—banks and securities businesses—from liability for their breaches of contract and fiduciary duty. That is an erroneous interpretation of SLUSA.
The critical statutory language describes which state-law class actions are not permitted:
No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
15 U.S.C. § 78bb(f)(l). The key phrase in (A), “alleging a misrepresentation or omission of a material fact,” is of course the language of fraud and negligent misrepresentation, and (B) also echoes the prohibitions of federal securities law.
How might one transform a complaint alleging only breach of contract and breach of fiduciary duty into one “alleging a misrepresentation or omission of a material fact”? The problem is that parties who disagree about the meaning of their contract will often believe and allege that the counter-party has told them something that is not true or has failed to disclose something, such as that party’s different interpretation of the contract. Also, a fiduciary owes a beneficiary a duty of candor, see generally Restatement (Third) of Trusts §§82 (duty to provide information), 109 (duty to account for principal and income). A breach of that duty can look a lot like an “omission of a material fact.”
II. The Circuit Split
How should a court apply SLUSA to such class action complaints alleging state-law claims for breaches of contract and fiduciary duty? This question has produced at least a three- or four-way circuit split.
Since the 2012 oral argument in this case, the Second and Ninth Circuits have adopted the approach that I believe is best: a class action claim is barred by SLUSA only if the plaintiffs claim requires proof of a misrepresentation or omission of material fact. This approach avoids both the risks of artful pleading by plaintiffs and the jiu-jitsu move by defendants. It bars claims that are, in substance, for fraud or negligent misrepresentation yet allows contract and fiduciary claims to go forward. This approach is most consistent with the statute’s text and purposes, and it is administrable and fair.[1]
In Freeman Investments, L.P. v. Pacific Life Ins. Co., 704 F.3d 1110 (9th Cir. 2013), *923 the defendant had sold variable universal life insurance policies to the plaintiffs. The plaintiffs alleged that the defendant had breached their contracts and . a duty of good faith and fair dealing by charging policyholders an excessive “cost of insurance.” The original complaint had included allegations of systematic concealment and deceit involving hidden fees. Those allegations provided fuel for the defendants’ argument that these were allegations of misrepresentations and omissions of material facts so that SLUSA should apply. The district court agreed and dismissed.
In an opinion by then-Chief Judge Ko-zinski, the Ninth Circuit reversed, explaining that SLUSA preemption should depend on what the plaintiffs would be required to show to prove their claims:
To succeed on this [contract] claim, plaintiffs need not show that Pacific misrepresented the cost of insurance or omitted critical details. They need only persuade the court that theirs is the better reading of the contract term. See Yount v. Acuff Rose-Opryland, 103 F.3d 830, 836 (9th Cir. 1996). “[Wjhile a contract dispute commonly involves a ‘disputed truth’ about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract.” Webster v. N.Y. Life Ins. and Annuity Corp., 386 F.Supp.2d 438, 441 (S.D.N.Y. 2006). Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they “really” involve deception or misrepresentation. Id.; see also Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973) (“Not every breach of a stock sale agreement adds up to a violation of the securities law.”).
704 F.3d at 1116-16 (emphasis added).
In Kingate Management, 784 F.3d 128, the Second Circuit adopted essentially the same approach in a complex case against some of the “feeder funds” for Bernie Ma-doffs Ponzi scheme. The plaintiffs asserted 28 claims, which the Second Circuit organized in five groups. Most relevant for our purposes are the “Group 4” and “Group 5” claims for breaches of contract and fiduciary duty and other non-fraud tort theories, and for recovery of professional fees that were calculated in error or charged for services performed poorly. The district court had dismissed the entire case under SLUSA.
The Second Circuit reversed in a thorough opinion by Judge Leval. SLUSA preempted some claims alleging that , the defendants themselves had engaged in fraudulent or negligent misrepresentations. SLUSA did not preempt the claims for breaches of contract or fiduciary duty or for fees. Those claims would not require the plaintiffs to prove that the defendants had misrepresented or omitted material facts, so they were not preempted by SLUSA. 784 F.3d at 151-62. Accord, LaSala v. Bordier et Cie, 519 F.3d 121, 141 (3d Cir. 2008) (reversing dismissal; SLU-SA preemption would not apply to breach of fiduciary duty claims unless allegation of misrepresentation operates as “factual predicate” for claim; extraneous allegations would not support SLUSA preemption) (Poliak, J.); Norman v. Salomon Smith Barney, Inc., 350 F.Supp.2d 382, 387-88 (S.D.N.Y. 2004) (Lynch, J.) (“Plaintiffs’ claim is simply that Salomon said it would do something in exchange for plaintiffs’ fees, and then didn’t do what it had promised. The fact that the actions underlying the alleged breach could also form the factual predicate for a securities fraud *924 action by different plaintiffs cannot magically transform every dispute between broker-dealers and their customers into a federal secuiities claim—the mere ‘involvement of securities [does] not implicate the anti-fraud provisions of the securities laws.’ ”).
The Sixth Circuit takes a different approach. It does not consider whether allegations of fraud are required to prove the plaintiffs’ contract claim: “[SLUSA] does not ask whether the complaint makes ‘material’ or ‘dependent’ allegations of misrepresentations in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple.” Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 311 (6th Cir. 2009), quoted in Atkinson v. Morgan Asset Mgmt., Inc., 658 F.3d 549, 555 (6th Cir. 2011). This seemingly textual approach is not symmetrical, however. If the plaintiff has omitted allegations of fraud, the Sixth Circuit instructs district courts to treat the omission as artful pleading, to imply the toxic allegations, and to dismiss. Atkinson, 658 F.3d at 555, following Segal, 581 F.3d at 310-11.
Before today’s decisions in Holtz and Goldberg, we applied a third standard for deciding when a contract or fiduciary claim might be preempted. In Kurz v. Fidelity Management & Research, 556 F.3d at 641, and Brown v. Calamos, 664 F.3d 123, 127 (7th Cir. 2011), we signaled that SLUSA would not preempt contract claims. In Brown, we addressed the problems I discuss here. We allowed considerably more room for contract class actions, but under a standard that is difficult to administer. Brown requires a court to look at a complaint and to prophesy whether “it is likely that an issue of fraud will arise in the course of the litigation.” 664 F.3d at 128-29.
While I believe plaintiff should prevail here under the better rule adopted by the Second, Ninth, and Third Circuits, plaintiff should also prevail under Brown. Her breach of contract claim requires her to show only that the contract with the bank authorized certain fees and that the bank breached the contract by charging additional fees (in the form of retaining the “sweep fees” paid for the investment of plaintiffs’ funds). There is no need for fraud to become an issue.
In both this case and Holtz, however, my colleagues go beyond the Brown standard and adopt a new, fourth standard that is different from any other circuit’s approach. Under Goldberg and Holtz, now, virtually any breach of contract claim is preempted. If the defendant had told the plaintiff what it was actually doing, the plaintiffs acquiescence could have been treated as a modification or waiver of the relevant contract terms. Thus can virtually any breach of contract claim by the customer of a securities firm be transformed into a doomed securities fraud claim that must be dismissed.
My colleagues offer a couple of interesting exceptions, though. One is for negligent breaches of contract, “by mistake.” Holtz, 846 F.3d at 932. Why the defendant’s state of mind should matter to a breach of contract claim is not explained, as a matter of either contract law or federal securities law. SLUSA surely preempts claims for negligent misrepresentation as well as those for intentional fraud. (Recall that SLUSA preemption does not include a scienter requirement.) This proposed exception has no apparent basis in the text of SLUSA and seems entirely arbitrary.
The second exception is for breaches of contract that occur after a plaintiff has already invested her money, presumably because such a breach is not “in connection *925 with” the purchase or sale of a covered security. While the statutory text seems to support this exception, it is likely to have little meaning. In this case, for example, if the bank’s retention of the sweep fees was a breach of contract, it happened every day, and “in connection with” the bank’s purchases and sales of the securities with plaintiff’s capital. In any event, the limited scope of this exception will surely produce arbitrary results.[2]
III. The Merits of Preempting Contract Claims
Only the Supreme Court can settle this three- or four-way circuit split. The Second Circuit’s opinion in Kingate, the Ninth’s in Freeman, and the Third’s in Bordier explain well why the best approach to this preemption problem is to ask whether the plaintiffs would be required to prove a misrepresentation or omission of a material fact. I offer a few additional thoughts prompted by my colleagues’ opinions in this case and Holtz.
First, my colleagues take statutory purpose too far. The core of their thinking appears in Holtz: “Allowing plaintiffs to avoid [SLUSA] by contending that they have ‘contract’ claims about securities, rather than ‘securities’ claims, would render [SLUSA] ineffectual, because almost all federal securities suits could be rechar-acterized as contract suits about the securities involved.” 846 F.3d at 930-31.
My colleagues have lost sight of a point that we and the Supreme Court have made repeatedly: “no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute’s primary objective'must be the law.” Rodriguez v. United States, 480 U.S. 522, 525-26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987); see also, e.g., Board of Governors of Federal Reserve System v. Dimension Financial Corp., 474 U.S. 361, 373-74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (“Application of ‘broad purposes’ of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action. Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises.”); Covalt v. Carey Canada, Inc., 860 F.2d 1434, 1439 (7th Cir. 1988) (“Courts do not strive for ‘more’ of all legislative objectives, however; laws have both directions and limits, and each must be scrupulously honored.”).
We have made the same point more colorfully, in a way that applies directly *926 here: “When special interests claim that they have obtained favors from Congress, a court should ask to see the bill of sale. Special interest laws do not have ‘spirits/ and it is inappropriate to extend them to achieve more of the objective the lobbyists wanted.” Chicago Prof'l Sports Ltd. P’ship v. Nat’l Basketball Ass’n, 961 F.2d 667, 671 (7th Cir. 1992).
The banks and securities businesses that won passage of SLUSA did not win a broad preemptive provision for all class action claims that might be made in connection with purchases or sales of covered securities. They certainly did not win passage of language preempting state-law claims for breach of contract or fiduciary duty. The enacted language preempts covered class action claims that allege “a misrepresentation or omission of material fact.” That language obviously calls to mind the law of fraud and (because there is no mention of scienter) negligent misrepresentation. See also Chadbourne & Parke LLP v. Twice, 571 U.S.-,-, 134 S.Ct. 1058, 1068-69, 188 L.Ed.2d 88 (2014) (rejecting purpose-based efforts to expand reach of SLUSA).
My colleagues’ approach also fails to give effect to the federalism balance struck in SLUSA. As the Supreme Court pointed out in Dabit, the statute was drafted to preserve certain specific roles for state securities law and securities regulators. See Dabit, 547 U.S. at 87-88, 126 S.Ct. 1503, discussing 15 U.S.C. § 78bb(f)(3), (f)(4), & (f)(5)(C); see also 15 U.S.C. § 77p (parallel provisions under 1933 Securities Act). The Dabit Court noted that including these explicit “carve-outs” for state law “both evinces congressional sensitivity to state prerogatives in this field and makes it inappropriate for courts to create additional, implied exceptions.” Id. (rejecting implied exception for fraud claims alleging inducement not to sell or purchase securities); accord, Chadbourne & Parke, 571 U.S. at-, 134 S.Ct. at 1068-69 (interpreting SLUSA to respect its limits and to preserve roles for state law and state courts).
That same federalism balance should persuade federal courts not to find in SLUSA implied authority to sweep up claims arising only under state law of contract and fiduciary duty. The Congress that took such care to leave room for certain state securities laws and enforcement powers would be surprised by these decisions. It would be surprised to learn that federal courts are reading the statute to give special privileges to banks and securities businesses by preventing effective enforcement against them of such core areas of state law as contract and fiduciary law.[3]
My colleagues’ expansive reading of SLUSA also conflicts with the Supreme Court’s approach to a closely related federalism issue in Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 578 *927 U.S.-, 136 S.Ct. 1562, 194 L.Ed.2d 671 (2016). The issue in Manning was whether section 27 of the Securities Exchange Act of 1934, which grants exclusive federal jurisdiction over actions “brought to enforce” Exchange Act requirements, extends to a complaint that is filed in state court and alleges only state-law claims, but mentions federal securities law. The unanimous Court said no, holding that the standard under section 27 is the same as the “arising under” rule for federal question jurisdiction under 28 U.S.C. § 1331, so that it applies when federal law creates the cause of action asserted and in a narrow category of cases where a state-law claim will necessarily raise a disputed and substantial issue of federal law. 578 U.S. at-, 136 S.Ct. at 1569-70.
Most salient for these cases is the Court’s federalism reasoning. 578 U.S. at -, 136 S.Ct. at 1573-75 (Part II-C). The Court warned against reading grants of exclusive federal jurisdiction too broadly, so as to interfere with state law and state courts:
Out of respect for state courts, this Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires. We have reiterated the need to give “[d]ue regard [to] the rightful independence of state governments”—and more particularly, to the power of the States “to provide for the determination of controversies in their courts.” Romero [v. International Terminal Operating Co.], 358 U.S. [354] at 380 [79 S.Ct. 468, 3 L.Ed.2d 368 (1959)] (quoting Healy v. Ratta, 292 U.S. 263, 270 [54 S.Ct. 700, 78 L.Ed. 1248] (1934); Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 [61 S.Ct. 868, 85 L.Ed. 1214] (1941)). Our decisions, as we once put the point, reflect a “deeply felt and traditional reluctance ... to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes.” Romero, 358 U.S. at 379 [79 S.Ct. 468], That interpretive stance serves, among other things, to keep state-law actions like Manning’s in state court, and thus to help maintain the constitutional balance between state and federal judiciaries.
578 U.S. at-, 136 S.Ct. at 1573.
Manning shows that Congress must use clear language if it intends to order federal courts to intrude into long-established realms of state law and state courts. The statutory language and standards in these cases are not identical, of course, but Manning was enforcing limits on a grant of exclusive federal jurisdiction. The Court explained that “it is less troubling for a state court to consider such an issue of [federal securities law] than to lose all ability to adjudicate a suit raising only state-law causes of action.” 578 U.S. at -, 136 S.Ct. at 1574. In Manning itself, the state-law complaint actually mentioned the federal securities laws but did not rely upon them for relief. The Court rejected Merrill Lynch’s argument, akin to my colleagues’ approach here and in Holtz, that a judge should go beyond the face of the complaint and find “artful pleading,” leaving no room for state law in the case simply because the plaintiff might have tried to assert a claim under federal law, but did not. Proper respect for the role of states and their laws should lead us to reject the similar attempted expansion of SLUSA preemption in this case and Holtz.
Finally, the rule of the Second, Ninth, and Third Circuits also has the benefit of being easier to administer fairly. As noted, our earlier Brown opinion requires judges to be prophets, looking at complaints and predicting whether fraud is likely to be an issue. The more expansive approach taken in this case and Holtz will likely produce *928 results that are unpredictable, unfair, or both. When the defendants in Manning suggested a similar approach, the Supreme Court said it had “no idea how a court would make that judgment” and said that avoiding this “tortuous inquiry into artful pleading is one more good reason to reject” the approach. 578 U.S. at-, 136 S.Ct. at 1575.
We should focus instead on whether a misrepresentation or omission of material fact is an element of the plaintiffs cause of action, as the Second and Ninth Circuits did in Kingate and Freeman. This would provide a straightforward standard consistent with the statutory language of fraud— “a misrepresentation or omission of a material fact.” It can be applied fairly at the pleading stage, preventing both truly artful pleading by plaintiffs and unfair recasting of contract and fiduciary claims as securities claims.

. The recent Second and Ninth Circuit cases explain why my description of the circuit split differs from that in Judge Flaum’s concurrence.

. Circuits have also divided on two related procedural questions: whether SLUSA preemption should be analyzed and applied to the entire civil action or claim-by-claim, and whether a plaintiff whose complaint or claim is deemed preempted should have any opportunity to amend the pleading to cure the problem. Compare, e.g., Kingate, 784 F.3d at 152-53 (applying SLUSA preemption claim-by-claim), with Atkinson, 658 F.3d at 555-56 (in dicta, one preempted claim requires dismissal of entire case); also compare, e.g., Freeman, 704 F.3d at 1116 (allowing amendment), and U.S. Mortgage, Inc. v. Saxton, 494 F.3d 833, 842-43 (9th Cir. 2007) (allowing amendment), with Brown, 664 F.3d at 131 (not allowing amendment). I agree with the claim-by-claim approach and allowing plaintiffs who can avoid SLUSA preemption to do so by amendment. Especially under post -Iqbal federal civil pleading standards, plaintiffs have strong incentives to say more than is necessary in their complaints. Alleging a little more than necessary should not be fatal.

. My colleagues find support for their expansive treatment of SLUSA in Northwest, Inc. v. Ginsberg, 572 U.S.-, 134 S.Ct. 1422, 188 L.Ed.2d 538 (2014), which held that a state-law claim against an airline for breaching an implied covenant of good faith and fair dealing was preempted by the Airline Deregulation Act. See Holtz, 846 F.3d at 930-31. The simple answer to this argument is that the preemptive language in the Airline Deregulation Act is much broader than the relevant language in SLUSA. The Airline Deregulation Act provides that states “may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.” 49 U.S.C. § 41713(b)(1) (emphasis added). To the extent Northwest is relevant here, it might affect only plaintiff's fiduciary duty claim, not her claim that the bank simply breached the .fee provision of the written contract by charging extra fees not authorized by the contract.